(No. 31652.—

PAUL R. ELLGUTH, Appellee, *vs.* BLACKSTONE HOTEL, INC., Appellant.

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

JOHN J. MACIEJEWSKI, of Chicago, (CHARLES D. SNE-WIND, of counsel,) for appellant.

JOSEPH BARBERA, of Chicago, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

We have allowed an appeal from the Appellate Court for the First District, which affirmed a judgment in favor of the plaintiff in the superior court of Cook County. The principal question involved is whether the plaintiff was an invitee or licensee when injured upon premises controlled by the defendant. The decision of this point will largely determine the merits of the case.

The facts as disclosed by the record in the case are as follows: At the time of the accident, plaintiff was 75 years of age, 6 feet tall, and blind in his left eye from childhood, but otherwise in good health. Shortly before the accident, he was working occasionally as a contractor of odd jobs, employing two or three men, earning approximately $1000 per year. In the basement of the Blackstone Hotel, operated by defendant, were several old refrigerators, located in a storage room. They were made

of wood and plaster and contained some iron pipe. Approximately 140 feet west of this storage room was located a tunnel that ran underneath an alley and connected the basement of the Blackstone Hotel with that of the Blackstone Theatre, located across the alley. A passageway about 8 feet wide and 8 feet high led from the storage room to the entrance of the tunnel. The tunnel was about 18 feet long. There was a metal door at the entrance to the tunnel, which was always kept open. Defendant, for a number of years prior to the accident in question, had made use of this tunnel to get to its paint shop and equipment, but beginning shortly before the month of July, 1946, the tunnel was used daily by the engineer to go over and check the vacuum pumps which supplied the theater with heat and steam, and, without question, defendant had control of the tunnel. It is undisputed that there was no natural light penetrating the areaway leading to the tunnel, but there was maintained in this areaway two 100-watt incandescent lamps. There is a dispute in the evidence as to whether these lamps were burning at the time of the accident. It also appears that some of the pipe and timbers removed from these refrigerators were 15 feet or more in length and could not be taken up on the service elevator that ran from the basement of the hotel to the floor above.

Defendant's witness Davidson, superintendent of maintenance, and defendant's witness Douglas, his assistant, maintained their headquarters in the engine room of the hotel building, located not far distant from the areaway in question. Davidson testified that on the day of the accident, July 11, 1946, plaintiff and Douglas came to him to inquire whether they could take the pipes up on the elevator; that he told them it could not be done without cutting the pipe, whereupon plaintiff told him that the pipes had been sold, that the value was in their length, and he had to get them out without cutting them. Davidson did not testify that he told plaintiff he could not use the areaway or the

tunnel or that he prohibited him in any way from doing so. He testified that he "thought" Douglas told Ellguth in his presence that the use of the tunnel would be very dangerous, but Douglas nowhere in his testimony claims to have made any such statement. Douglas merely said: "I advised him it is not good policy to take pipes under the theater because the theater don't belong to us." Also, in the presence of plaintiff, when Davidson was asked whether the pipes could be taken on the elevator, Davidson replied: "It is not good policy to do that." There is not one word of testimony on the part of Davidson or Douglas that they refused to allow plaintiff to go through the passageway or tunnel. Plaintiff was anxious to ascertain whether it would be feasible to take the material through the tunnel, and it was clearly for that purpose that Douglas led him through the passageway. Douglas testified that plaintiff insisted on ascertaining whether the pipes and timber could be taken through the tunnel and removed to the street or alley; that he thereupon led plaintiff through this areaway in question to the tunnel, and that plaintiff had his hand or arm on his shoulder as they were walking through the areaway. Plaintiff testified in connection with this incident that Douglas said, "Come on, follow me, I will show you." Douglas further testified that neither of them had any flashlight, and that suddenly plaintiff yelled something about his eye. It appears that some metal object or hook, protruding in this areaway, struck plaintiff's eye, injuring the eyeball, destroying all vision, and thereafter plaintiff became totally blind.

The majority opinion of the Appellate Court upon these facts concludes: "Upon the admitted facts, plaintiff must be regarded, as a matter of law, an invitee and not a licensee or trespasser." A dissenting opinion filed in the case, with equal clarity states: "Upon the uncontradicted evidence plaintiff herein was, at best, a mere licensee at the time and place of the accident, and defendant was only

liable for his wilful and wanton injury." While it is true there is a difference among the members of the Appellate Court, the law makes the opinion of the majority the opinion of the court, (Ill. Rev. Stat. 1949, chap. 37, par. 31,) and we are bound by its finding of fact, unless we can say as a matter of law the evidence does not, with all of its reasonable inferences, sustain the judgment. *Seiders* v. *Henry,* 347 Ill. 467; *Ahlenius* v. *Bunn & Humphreys, Inc.* 358 Ill. 155.

The materiality of the question of whether plaintiff was an invitee or licensee arises from the fact that a heavier duty of care is placed upon an owner of premises toward an invitee than toward a licensee or trespasser. Toward an invitee the owner of premises must use reasonable care and caution in keeping the premises reasonably safe for use by such invitee; while toward a licensee no duty is owed by such owner, except not to wantonly and wilfully injure him. (*Pauckner* v. *Wakem,* 231 Ill. 276; *Milauskis* v. *Terminal Railroad Ass'n,* 286 Ill. 547.) To be upon premises by an implied invitation means that the person is there present for a purpose connected with the business in which the owner of the premises is engaged, or which he permits to be carried on.. *John Spry Lumber Co.* v. *Duggan,* 182 Ill. 218; *Pauckner* v. *Wakem,* 231 Ill. 276; *Calvert* v. *Springfield Electric Light and Power Co.* 231 Ill. 290; *Franey* v. *Union Stock Yard and Transit Co.* 235 Ill. 522; *Purtell* v. *Philadelphia and Reading Coal and Iron Co.* 256 Ill. 110; *Milauskis* v. *Terminal Railroad Ass'n,* 286 Ill. 547.

It is frequently a difficult question to decide whether the injured person is a licensee or invitee. The test is said to be whether one goes upon the premises of the owner by invitation to transact business in which the parties are mutually interested, (*Pauckner* v. *Wakem,* 231 Ill. 276,) or, as we have said in *Purtell* v. *Philadelphia and Reading Coal and Iron Co.* 256 Ill. 110, "When a person is upon premises by implied invitation, it means he is there for a purpose con-

nected with the business in which the owner of the premises is engaged or which he permits to be carried on." It can readily be seen that such tests do not cover all of the circumstances which may arise in different cases, and the facts in each case must necessarily be examined to determine when an invitee ceases to be such and becomes a licensee. We think, however, that when it is clear an invitee steps beyond the bounds of his invitation he does become a licensee. *Brett* v. *Century Petroleums, Inc.* 302 Ill. App. 99; *Wilson* v. *Goodrich,* 218 Iowa, 462.

In this case, when we examine the evidence, the controlling facts are clear and undisputed. Plaintiff had a contract to remove some old refrigerators from defendant's premises. He was to have the salvage as his compensation. Since the work had to be done in a basement, plaintiff necessarily had to use means of egress furnished or controlled by the defendant to remove the refrigerators therefrom. No particular manner or means of removal of the debris was specified. When plaintiff found he had iron pipes 15 feet long which would not go up or be allowed to go up the elevators he asked about the tunnel between the defendant's building and a theatre building, to ascertain if the pipes could be taken out through it, and thereupon defendant's agent said: "Come on, follow me, I will show you." It was while he was being shown the tunnel by the agent of the defendant that he received the injury upon which the suit is based.

From these admitted facts it appears there was an actual benefit to be derived by the parties; the defendant would get the demolished material out of the basement, and the plaintiff would obtain the full value of his salvage. It must be kept in mind that the examination of the tunnel was for the purpose of determining whether it was suitable for removal of the material from the demolished refrigerators, and that the plaintiff was expressly invited to go with the defendant's agent to look it over. We think that this was

sufficient evidence to support the finding of fact of the majority opinion that the plaintiff was an invitee, and that we cannot, as a matter of law, say there is no evidence to support the finding of the Appellate Court. Nor can we say the plaintiff stepped beyond the bounds of his invitation to become a mere licensee.

It is claimed, however, that certain instructions given in the case were erroneous. Instruction No. 10 is objected to because it is said it assumes that the plaintiff was an invitee, and this invades the province of the jury to determine that fact. Objection is also made to instruction No. 13, which states the rule that the defendant must use reasonable care and caution in keeping the area or corridor in a reasonably safe condition for travel of persons lawfully on the premises.

Had there been an issue in the pleading, or at the trial, as to whether the plaintiff was an invitee or a licensee there might be a question about these two instructions. However, it is clear that the plaintiff's complaint was drawn entirely upon the theory he was an invitee. It charges that the defendant controlled the premises; that the plaintiff was doing certain work under the direction of defendant, and that the plaintiff was led by the defendant into the dark tunnel, which was unlighted, and resulted in the injury to his eye, while he was in the exercise of due care and caution for his own safety. A special interrogatory was submitted, and the answer of the jury was that plaintiff was in the exercise of due care at the time of his injury. No issue is made by the defendant that plaintiff was a licensee toward whom the defendant owed no duty, except from wantonly and wilfully injuring him. As a matter of fact, the defendant submitted an instruction to the effect that if the plaintiff failed to use ordinary care for his own safety, or if he in any way contributed to the proximate cause of the accident, he could not recover, because of contributory negligence. It would have been unnecessary

to submit such an instruction had the issue been that the plaintiff was a licensee and not an invitee.

The defendant also offered another given instruction, which told the jury it was necessary for the plaintiff to prove, first, that he was exercising ordinary care; and second, that the defendant was guilty of negligence that was the proximate cause of the injury. It is perfectly clear, from an examination of the pleadings, the instructions, and the evidence, that the issue of whether the plaintiff was a licensee was not before the trial court; that the sole question presented was whether the defendant had performed its full duty towards an invitee, and as to whether the latter was guilty of contributory negligence. For the purpose of instructing the jury upon these issues the instructions were proper; and when a case has been tried, and a verdict rendered, a defendant cannot, for the first time, raise something in the Appellate Court that he did not raise in the trial court, so as to give the latter an opportunity to pass upon the same.

While it is perhaps beyond the purview of this opinion, we are satisfied that the majority opinion of the Appellate Court, upon the finding that the appellee was an invitee and not a licensee, was amply justified by the evidence. In trials before a jury involving the debatable ground whether a person is an invitee or a licensee, a reasonable regard must be given to all of the surrounding facts and circumstances, and a person cannot be arbitrarily passed from one status to another upon the mere suspicion that an act was based upon facts more to his benefit than to the benefit of the opposite party.

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*