**Thomas Kincaid, Plaintiff-Appellant, v. George Lagen and Leo Thanos, d/b/a Lagen's Recreation Parlor and William Lapp, Defendants-Appellees.**

Gen. No. 50,465.

First District, Fourth Division.

April 7, 1966.

Rehearing denied July 27, 1966.

Theodore L. Forsberg, of Chicago, for appellant.

Neil K. Quinn and Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), for appellees, George Lagen and Leo Thanos, d/b/a Lagen's Recreation Parlor.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff brought an action based upon negligence to recover the damages which were incurred by him while a patron in Lagen's Recreation Parlor as a result of being struck by a bowling ball thrown by William Lapp. A judgment in favor of the plaintiff was entered upon a verdict returned by the jury against both of the defendants after which George Lagen and Leo Thanos, doing business as Lagen's Recreation Parlor, and William Lapp filed motions for judgment notwithstanding the verdict and in the alternative for a new trial. The motions of Lapp were denied. The motion of Lagen and Thanos for judgment notwithstanding the verdict was granted and a judgment in their favor was entered, from which plaintiff appeals.

Plaintiff testified that he arrived at Lagen's Recreation Parlor shortly after noon on March 11, 1956, with the intention of bowling; that he was an experienced bowler; that he was standing in an open area behind the alleys, approximately three or four feet behind the spectators' seats, when he saw defendant Lapp emerge from the ball room [1] "thumbing" a bowling ball [2]; and that he next remembered waking up in the hospital. Plaintiff also testified as to the proximity of the ball room to the open area in which he was standing and stated:

"This bowling room that I referred to where they keep the bowling balls is to your left as you enter the bowling alley. The door from that room

---

[1] A repository for bowling balls which were owned by the bowling alley and were for the use of patrons.

[2] Plaintiff testified that "thumbing" is a characteristic of bowlers to determine whether or not the finger holes fit; that it involves putting the thumb in the thumb hole and putting the fingers in the finger holes to see if the ball fits the particular hand.

309

leads to the open area. There was no doorway leading from the ball room into the alley proper. The approximate distance from the door of said ball room to the bowling lanes themselves was twenty feet—to the first alley. If you came out of this ball room you would have to walk to the open area to get to the lanes themselves."

Plaintiff further testified that he "did not notice any signs around this bowling alley whatever" and that he had not previously seen a bowler in Lagen's swinging a ball in that area. On cross-examination plaintiff testified that the ball was dangling from Lapp's hand "and he was in a slight swinging motion." Plaintiff admitted that in his sworn deposition he had stated that Lapp was swinging the ball in an orbit, about a foot each way, to get the feel of it.

William Lapp testified that he was an experienced bowler; that he arrived at Lagen's at approximately 1:00 p. m. on March 11 with his wife and children; that he had forgotten his own bowling ball; and that he encountered difficulty in finding a suitable ball in the ball room because of the large size of his thumb. He further stated that:

> "After I found this ball, I walked out of the room with the ball, and I swung the ball to feel the weight of the ball and get the feel of the ball; and as I swung it, coming up in an upward motion, the ball had slipped out of my hand and I hollered to Mr. Kincaid, and as I hollered he turned and the ball hit him up over the eye. I have seen bowlers take practice swings quite often."

> . . . . . .

> ". . . After the occurrence I had occasion to examine my fingers, when I was standing by Tom Kincaid; when he was on the floor. I noticed an

oil film on my fingers. These were the fingers that I had in the bowling ball. I did not examine the ball."

. . . . . .

". . . When I found this ball that I had at the time of the accident, and when I put my fingers into it, I did not feel anything unusual about that ball at the time. Then I walked from the bowling ball room.

"When I walked from the bowling ball room I had my fingers in the ball, and I was carrying the ball in front of me."

. . . . . .

". . . I tried it [the bowling ball] for finger size. I got ahold of the ball and I was working my thumb in there to see that it would release when I'd use it. I did not notice anything unusual about the ball or the holes at that time."

Lapp also testified that he had bowled at Lagen's approximately four years and that only once or twice had he seen people take practice swings in the area of the accident.

Plaintiff's wife testified and stated that she had been bowling for ten years and had observed other bowlers taking practice swings but "not in that area."

Peter Lagen (son of defendant George Lagen) testified and stated that he had been employed at the alley for approximately four months and was present on the day in question; that no form of wax is used to clean the alleys in that they were maintained by a buffing machine; that he has never seen wax on any ball owned by the bowling alley; and that after the accident he placed the ball against the spectators' bench and subsequently could not locate it. He further stated that there were no signs posted in the ball room that prac-

311

tice swings were permitted only in that room nor were there signs outside the room relating to practice swings, but that it is an ethic of bowling to take all practice swings in the ball room.

The evidence is in conflict as to the distance between the plaintiff and Lapp when the accident occurred, the estimates ranging from six to twenty-five feet.

■ A motion for judgment notwithstanding the verdict presents the single question whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the party resisting the motion, tends to support the verdict of the jury. Ficht v. Niedert Motor Service, Inc., 34 Ill App2d 360, 181 NE2d 386.

■ Plaintiff contends that the evidence and favorable inferences therefrom tended to prove the negligence of the defendants and asserts first that defendants negligently failed to post signs to the effect that practice swings were not permitted in this open area. Plaintiff testified that he had never seen anyone take practice swings in this area; plaintiff's wife testified that in ten years of bowling she had observed other bowlers taking practice swings but "not in that area"; Lapp testified that he had seen practice swings in the area only once or twice in four years; and Lagen testified that under the "ethics" of bowling, such practice swings are taken in the ball room. Therefore the negligent act of Lapp in swinging and releasing the bowling ball in this open area which struck the plaintiff was entirely unanticipated and unforeseeable by the defendants. One who owns or is in charge of property is bound to use reasonable care to keep the property safe for the benefit of those who come upon it as invitees. Ellguth v. Blackstone Hotel, Inc., 408 Ill 343, 97 NE2d 290. However, that person is not an insurer of the safety of invitees and is not required to foresee and guard against accidents or injuries to invitees re-

312

sulting from unusual and unexpected occurrences which cannot reasonably be anticipated. Prater v. Veach, 35 Ill App2d 61, 181 NE2d 739; Alfortish v. Massachusetts Bonding & Insurance Co., (La), 171 So2d 705 (1965). Therefore, since the negligent act of Lapp was entirely unanticipated and unforeseeable, the defendants were not guilty of negligence in failing to post signs that such practice swings were allowed only in the ball room.

█ Plaintiff next asserts that there was oil in the holes of the ball and that defendants thereby provided Lapp with an unsafe bowling ball. The only evidence in support of that assertion is the testimony of Lapp who stated that he noticed an oil film on his fingers after the accident. There was no testimony that the balls which were owned by the alley had been cleaned or, if they would be cleaned, that an oily substance would be used. Moreover, this "oil film" was noticed by Lapp after the terrifying experience of striking plaintiff in the head prior to which he had been carrying the ball with his fingers in the holes all the way from the ball room. It is significant that Lapp did not notice anything unusual about the ball when he put his fingers into the holes while in the ball room. Certainly if there was oil in those holes Lapp would have noticed it at that time. The evidence and reasonable inferences therefrom do not support a finding that the defendants provided Lapp with an unsafe bowling ball.

Plaintiff asserts in addition that there was a negligent structural design of the premises vis-a-vis the location of the ball room, in that there should have been a door leading to the alleys proper directly from the ball room. However, the issue as to whether defendants were negligent in this respect was not presented by plaintiff to the jury for its consideration and therefore the jury could not have based its verdict upon a finding that such negligence existed.

313

We find that the evidence and favorable inferences which can be drawn therefrom do not tend to support the verdict of the jury against George Lagen and Leo Thanos, doing business as Lagen's Recreation Parlor, and therefore the order of the court granting judgment notwithstanding the verdict is affirmed.

Affirmed.

ENGLISH and McCORMICK, JJ., concur.