WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

PER CURIAM.

(No. 5583

JEFFREY B. SERAGE, Claimant, *vs.* THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Respondent.

*Opinion filed June 21, 1973.*

GLENN & LOGUE, Attorney for Claimant.

WILLIAM E. LARRABEE, Attorney for Respondent.

HOLDERMAN, J.

On Sunday, January 14, 1968, at about 9:30 a.m., claimant slipped and fell a short distance east of the Commerce West Building on the University of Illinois campus.

The claimant was 28 years of age, a student at the University of Illinois, and was an administrator of the Illiac Four program.

Claimant alleges that as a result of the fall on January 14, 1968, he injured his left knee. He also alleges that he fell again on February 29, 1968, on the campus and again injured the same knee.

Claimant alleges that respondent was guilty of negligent and careless misconduct in one or more of the following ways:

A. Negligently and carelessly failed and omitted to remove ice from the walks and approaches to the University Building hereinbefore referred to after the same had been there for an unreasonable length of time when the Defendants knew or in the exercise of due care should have known that the same was heavily

travelled by students and teachers and some of them might fall and be injured thereon.

B. Negligently and carelessly failed and omitted to warn the Plaintiff of the dangerous condition thereof after said ice had been on the sidewalk for an unreasonably long period of time and after the Defendant knew or in the exercise of due care should have known that the same was dangerous to people, students and teachers travelling thereon.

C. Negligently and carelessly permitted ice to accumulate unnaturally at said place after they knew or in the exercise of due care should have known that the area where the ice accumulated was heavily travelled and someone walking thereon might be injured.

The record discloses that on the day in question snow was falling and had fallen on several preceding days. John W. Wilson, meteorologist for the University of Illinois, introduced the records for January 12th, 13th and 14th and also for February 29th. On January 12, 1968, the temperature was below freezing and precipitation was 1/10th inch and at 7:00 a.m. there were six inches of snow on the ground. At 7:00 a.m. on January 13, 1968, there had been precipitation of 5.4 inches of snow, and there was then nine inches of snow on the ground. On January 14, 1968, three inches of snow fell, and at 7:00 a.m. there were 13 inches of snow on the ground with below freezing temperatures, the high temperature for that day being 32°.

On February 29, 1968, there was only a trace of snow with temperatures below freezing all day.

Bruce Johnson, supervisor of ground maintenance at the University of Illinois, testified that he had held that position since 1967 and that his duty was ground maintenance which included clearing of the campus area of snow and ice and that he had 44 or 45 employees engaged in that work. He testified that they use Ford industrial tractors with blades or brooms and also garden type tractors and sand spreaders. He also testified that he had some 650 acres of campus to take care of and that the area where the accident occurred was under his control. He further testified that while Saturday and Sunday are not usually working days for his maintenance crews, they did

work on Saturday, January 13, 1968, for a period of 9 hours and they worked on Sunday, January 14, 1968, for a period of 7 hours, and they could cover the campus area in approximately 3 hours.

He testified that on February 28th, the crew came to work at 5:30 a.m. and on February 29th, they came to work at 8:00 a.m.

Claimant testified that after he fell on the 14th day of January, he was taken to McKinley Hospital where he was treated by Dr. Joseph Stilwell. Dr. Stilwell testified that he first saw the claimant on January 15th at which time he was informed by the claimant that he had slipped on the stairs on the 14th of January. This was denied by the claimant in cross-examination and he testified that he referred to an ankle he had hurt on the stairs.

Claimant was also treated by a Dr. Ross, who was informed by the claimant that he had been injured on January 14th and that he had again fallen on February 29th.

It is clear from the evidence that there was a very heavy fall of snow in the area where the accident took place, that it was an area of heavy traffic used by the 32,000 students of the University of Illinois, and that part of the snow had been packed into ice, and the areas where he fell on both occasions were level and the only reason he fell was because of the ice and snow.

The claimant contends that the ice was present on the approach to the Commerce West Building and had been for several days and that it was an unnatural accumulation due to the fact that the sidewalk over which the ice formed was heavily shaded by the buildings in the area so the sun never reached the ice. He contends that since it was an unnatural accumulation, the University of Illinois and the State of Illinois are consequently liable.

The argument that the snow and ice in an area shaded by a building is an unnatural condition does not seem to be justified by any decisions.

The claimant, in order to effect a recovery, must prove that the State was negligent and that as a result of the negligence of the State and without any contributory negligence of the claimant, the injury complained of occurred.

It does not appear from the evidence that the State was negligent in any manner, shape or form. On the contrary, it appears that the State used extraordinary diligence in removing the snow and ice, particularly when it is shown that the whole area could be cleared in approximately 3 hours, but even with the diligent effort made by the State, during a heavy snowstorm it is impossible to keep an area completely free of snow and ice. To impose upon any municipality, university or property owner the impossible burden of keeping their property free of snow and ice at all times would impose a burden that would quickly put them all out of business.

Without passing on the question of whether there was snow and ice on the area where the accident occurred, and the claimant an individual of mature years who still ventured forth upon it and who might consequently be guilty of contributory negligence, we believe it is not necessary to pass upon the possibility of any contributory negligence factor.

It is the law of this State that the mere presence of snow and ice accumulating because of natural causes is not such negligence as to make the owner of the property in question liable. *Zide* vs. *Jewel Tea Co.*, 39 Ill. App. 2d 217, 225 (1963).

We believe that the points involved in this case are

more fully set forth in the case of *Dreikers* vs. *State*, 23 C.C.R. 85, 89 (1959) where the following language is used:

"It is common knowledge that the northern half of Illinois is subject to miserable and many times dangerous conditions for four or five months of the year. Sleet, ice and snow make walking or driving a genuine hazard. In spite of reasonable efforts made to remove these hazards, many people are injured through no fault of their own."

Since the evidence introduced in this case does not support the charge of negligence, the only way to account for the misadventure is to accept it as an unfortunate accident.

It is the opinion of the Court that the claimant having failed to sustain the burden of proof necessary to maintain this action at that time, claim is denied.

An award to claimant is therefore denied.

━━━━━━━━

(No. 5583)

Supplemental Opinion

JUDGE BURKS concurring.

I join the opinion of Judge Holderman and am adding these comments to cite a very recent opinion of the Illinois Appellate Court which I believe strongly supports the decision of our court in this action.

I refer to the case of *Davis* vs. *City of Chicago, 289 NE 2d 250*. Since volume 289 has not yet been published, the opinion is now found in the NE 2d "Advance Sheets" (Illinois edition) dated December 20, 1972. This *Davis* decision, entered on October 20, 1972, may be regarded as a "landmark" case, and I felt it would be useful to have its key points of authority included in our published opinion.

The facts in the Davis case were strikingly similar to the case before us. There were six or seven inches of snow

on the sidewalk at 59 West Monroe Street where the plaintiff (Davis) slipped, fell and broke his kneecap. There was also a light angle of incline in the sidewalk at this point (an incline of 5.7°).

In the trial court, the jury found that negligent maintenance of the sidewalk on the part of the City proximately caused plaintiff's injury, and that plaintiff was not contributorily negligent. The Appellate Court reversed the jury's verdict and the $25,000 personal injury judgment for Davis against the City. In so doing, the court stated the following rules of law which I feel are applicable to the case we have just decided:

"[1] The law does not require that each municipality keep all sidewalks in perfect condition at all times, nor does the law impose the duty to correct slight variations from level or other minor defects. See *Arvidson* vs. *City of Elmhurst*, 11 Ill. 2d 601, 604, 145 N.E.2d 105.

"[2] A municipality is not liable for condition of its sidewalks caused by the natural accumulation of ice and snow, provided the walk is properly constructed and no other defect is shown.

"[3-4] For pedestrian to recover against municipality for injuries sustained in fall on sidewalk, a defect in sidewalk as a proximate cause is essential, and recovery will be denied where accident is caused solely by naturally icy surfaces.

"[5] Test to be applied in determining municipality's negligence with respect to maintenance of sidewalk is whether a reasonably prudent man would anticipate some danger to persons walking upon the sidewalk and take action to avoid it."