278

Estelle Gonzalez, Plaintiff-Appellee, *v.* Robert Batelli *et al.*, Defendants-Appellants.

(No. 58060;

First District (3rd Division)—April 18, 1974.

Schiller & Schiller, of Chicago, (Levin & Novoselsky, of counsel,) for appellant Batelli.

Ray Jeffrey Cohen and Alan I. Lapping, of Chicago, for appellant Onesti.

Lennon, King, Denniston & Carroll (John P. Blake, of counsel), for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is a wrongful death case in which the plaintiff, the mother of the decedent, alleged that the negligent acts and omissions of the two defendants proximately caused her son's death when, in a store owned by the defendant Batelli, a handgun allegedly owned by defendant Onesti discharged, fatally wounding her son. After a trial without jury the court awarded judgment to the plaintiff and assessed damages jointly and severally against the defendants in the amount of $20,000.

Both defendants appeal from the judgment entered against them and present the following issues on appeal: (1) whether the evidence proves any breach of duty by the defendant Batelli; (2) whether any negligent act or omission by defendant Batelli was the proximate cause of decedent's death; (3) whether the evidence proves any breach of duty on the part of the defendant Onesti which proximately caused the death, and (4) whether the decedent was free from all negligence contributing to his own death.

We reverse.

The pertinent evidence adduced at trial is as follows. At the time of

the incident in question the defendant Batelli owned and operated a small neighborhood grocery store on South Western Avenue in Chicago. The store was also a meeting place for Batelli's friends. The decedent, hereinafter Gonzalez, and defendants Onesti and Batelli were all friends and they, and other friends, would often meet and socialize at Batelli's store. They would spend time in the store talking to Batelli and one another, read newspapers and make sandwiches. Batelli would not charge his friends for the sandwiches and they were, evidently, not expected to make purchases on these social visits. Batelli testified that the decedent Gonzalez would, on occasion, make small purchases from him, but 90% of the time he came into the store as Batelli's friend, to visit, and bought nothing. Of all of Batelli's friends Gonzalez spent the most time in the store with him. The plaintiff, Gonzalez' mother described her son and Batelli as "inseparable friends".

On October 25, 1967, the day of the incident in question, both Onesti and Gonzalez had been in and out of the store at various times during the day and early evening. Gonzalez did not purchase anything from Batelli during these visits but had merely engaged in general conversation with Onesti and Batelli. When Gonzalez returned at approximately 9 P.M., Batelli, Onesti and Mario Florio, a 13-year-old neighborhood boy who worked for Batelli, were present in the store.

When Gonzalez entered the store Batelli was behind an "ice cream case" working on business bills and invoices. This ice cream case was one of a series of counters that ran along the north wall from which Batelli served his customers. The ice cream case was approximately 8 feet long and 5½ feet high. One end of this case abutted a lower counter used to check out items purchased by customers. Onesti was behind this lower counter, about 5 to 8 feet to the right of Batelli. Florio was further to the right of Onesti restocking some shelves at the far end of the store.

All three witnesses, Onesti, Batelli and Florio, testified that when Gonzalez entered he had a brown paper bag with him. He walked straight over to Onesti and did not speak to Batelli or Florio. Both Batelli and Florio noticed Gonzalez come in but they continued working and paid no attention to the conversation that began between Gonzalez and Onesti.

Onesti testified that Gonzalez removed a handgun from the paper bag and asked him if he wanted to see it. He displayed the gun to Onesti and offered to let him hold it. Onesti further testified that as Gonzalez handed him the gun, handle first, with the barrel pointing at himself, he touched the side, handle or barrel and, almost simultaneously, the

gun discharged wounding Gonzalez in the face. Onesti stated that he did not have his hand on the gun's handle or trigger at the time and did not know if Gonzalez' hand was on the trigger. A prior deposition of Onesti was read into evidence in which the witness stated that as soon as Gonzalez offered the gun to him, Gonzalez pulled it back, saying someone was coming into the store. The entire incident happened quickly and the gun fired 3 or 4 minutes after Gonzalez entered the store.

Batelli testified that he had no knowledge that a gun was brought on the premises until after the shooting. He did not see the gun in the hands of either Gonzalez or Onesti. He testified that at his position behind the ice cream case his view of the lower counter area where Gonzalez and Onesti were talking was obstructed by a scale and a cash register. This was corroborated by other witnesses who knew the layout of the store. The first time he saw the gun was a few minutes after the shooting when he saw it on the floor on the customer's side of the counter.

Florio testified he did not see the shooting and never saw a gun in Onesti's hands. He denied he testified at a coroner's inquest to the effect that he saw a gun in Onesti's hands prior to the incident.

After the gun went off there was, obviously, great confusion in the store. The three made attempts to aid Gonzalez while Batelli called the police and an ambulance.

Aurelio Gutierrez testified that he entered defendant's store shortly after the shooting, but before the police arrived. He stated that after seeing Gonzalez lying on the floor he heard Batelli say to Onesti, "You shouldn't have been playing around. You shouldn't have did [sic] it." Gutierrez also testified that he saw Batelli put a gun into a bag and give the bag to Florio telling him to dump it in a sewer, whereupon Florio took the bag and left by the back door. He further stated that when he heard the police coming he left the store because he didn't want to get involved. When later contacted by the police Gutierrez denied any knowledge of the shooting and then told them a story he admitted was different than his trial testimony. Both defendants denied that Gutierrez was ever inside the store at any time on the evening of October 25.

One further witness testified that she was familiar with the Batelli store and that it contained a large, wall mounted mirror that could have afforded Batelli a view of the lower counter area on the night of the shooting. She further testified that on her previous visits to the store she had the opportunity to notice that this mirror, a security device to

discourage shoplifters, was positioned so that Batelli, seated behind the ice cream case, could see the area where Gonzalez was shot. Batelli testified that he did not, nor could not, see the decedent and Onesti through the mirror.

On this evidence the trial court awarded judgment to the plaintiff and assessed damages against the defendants as aforementioned.

In this appeal defendant Batelli argues that the judgment of the trial court is contrary to the manifest weight of the evidence in that the evidence does not prove that he breached any duty of care that he owed to the decedent Gonzalez. The original complaint alleged that Gonzalez was the customer and invitee of Batelli on October 25, and that therefore Batelli owed him the duty to exercise due care and caution for his safety. The injury to the decedent is not disputed; however, defendant Batelli argues that Gonzalez was not an invitee, but a mere licensee. The issue before this court then, is the status of Gonzalez at the time of the shooting, because if he was a licensee defendant Batelli would only be liable for wilful and wanton negligence, an allegation the plaintiff does not make in her complaint. If Gonzalez was an invitee, as plaintiff alleges, the defendant would be liable for ordinary negligence. (*Drews v. Mason* (1961), 29 Ill.App.2d 269, 273, 172 N.E.2d 383.) It is obvious that in awarding judgment against Batelli on the instant complaint the trial court concluded Gonzalez was an invitee at the time of the incident.

■■ The materiality of the question of whether the injured party was an invitee or licensee arises from the fact that a heavier duty of care is placed upon an owner of premises toward an invitee than toward a licensee. "Toward an invitee the owner of premises must use reasonable care and caution in keeping the premises reasonably safe for use by such invitee; while toward a licensee no duty is owned by such owner, except not to wantonly and wilfully injure him." *Ellguth v. Blackstone Hotel, Inc.* (1951), 408 Ill. 343, 347, 97 N.E.2d 290.

It is frequently a difficult question to decide whether the injured person is a licensee or invitee. A person is said to be an invitee when he goes on the premises of the owner by invitation to transact business in which the parties are mutually interested (*Pauckner v. Wakem* (1907), 231 Ill. 276, 83 N.E. 202; *Ellguth v. Blackstone Hotel, Inc., supra*) or, as more recent cases have held, where he goes on the premises in furtherance of the owner's business or an activity he conducts or permits on the premises, as where the injured person performs some gratuitous service which benefits only the owner. (*Augsburger v. Singer* (1968), 103 Ill.App.2d 12, 242 N.E.2d 436; *Drews v. Mason, supra*; *Bogovich v. Schermer* (1958), 16 Ill.App.2d 197, 147 N.E.2d 711; *Madrazo v.*

*Michaels* (1971), 1 Ill.App.3d 583, 274 N.E.2d 635.) However, no one test covers all situations and the facts in each case must necessarily be examined to determine when an invitee ceases to be such and becomes a licensee. *Ellguth v. Blackstone Hotel, Inc., supra,* at 347.

■■ The undisputed facts in the instant case show that Batelli and Gonzalez were "inseparable friends". Gonzalez spent a good deal of time in the defendant's store and 90% of his time on the premises was spent as a friend, not as a customer. On October 25, Gonzalez had been in the store at least once before the shooting. When he returned at approximately 9 P.M. he walked directly up to Onesti and began a conversation. The only evidence adduced at the trial shows that Gonzalez' actions and conversation on that night were completely unconnected with the business defendant Batelli conducted on the premises. Nor does the evidence indicate he was there to perform an activity that benefited Batelli in any respect. In this regard it has been held that when a person enters a store, not for the purpose of business, but on some personal errand, then the person is merely a licensee, even though he may have previously been an invitee. *Wesbrock v. Colby, Inc.* (1942), 315 Ill.App. 494, 497, 43 N.E.2d 405.

■■ The facts surrounding Gonzalez' presence in Batelli's store on October 25, lead to but one conclusion; he was there as a social guest, to enjoy the company of his friends. In the recent case of *Madrazo v. Michaels, supra,* the court said:

> "[A] 'social guest' is a person who goes on the property of another for companionship, diversion, enjoyment of hospitality. He is a licensee who enters the premises of the owner by permission, but for his own purposes. [Citations.] To his social guest the owner is liable only for injuries occasioned by wilful and wanton misconduct." 1 Ill.App.3d at 586.

However, even if Gonzalez would be entitled to the status of invitee, the instant evidence does not disclose that Batelli breached the duty of reasonable care for the decedent's safety. There was no evidence that tended to show that Batelli had either actual or constructive knowledge of the handgun prior to the shooting. There was no proof that Batelli, as an ordinary, prudent man, had any knowledge of the probability of danger awaiting his customers. The testimony of one witness that Batelli could have seen the gun being handled by Onesti and Gonzalez, and therefore anticipated the danger, is not sufficient to meet the plaintiff's burden of proof in view of Batelli's testimony that he neither saw, nor could have seen, the area of the store where the two were standing. The owner of premises is not the insurer of the safety of invitees and is

not required to guard against accidents or injuries to them that he could not reasonably foresee. *Kincaid v. Lagen* (1966), 71 Ill.App.2d 307, 312-13, 218 N.E.2d 856.

■■ For these reasons, and the fact that the plaintiff made no allegation of wilful and wanton misconduct against Batelli, the judgment against him is clearly in error.

The defendant Onesti likewise argues that the judgment against him should be reversed because the finding of the trial court that Gonzalez was free from all contributory negligence in the incident that caused his death was contrary to the manifest weight of the evidence. The defendant contends that the plaintiff failed to meet her burden of proving that Gonzalez was free from any negligence that contributed to cause his death.

■ The law in Illinois as to the liability of one who by use of a gun inflicts injury on another is not the same as in cases where the injury is the result of some other instrument. "The rule is that if a person is injured by the discharge of a gun in the hands of one who has entire control of it, the burden is upon the latter to prove that the gun was not fired by him, either intentionally or negligently, but that the result was inevitable and without the least fault upon his part." (*Reed v. Kabureck* (1923), 229 Ill.App. 36, 43.) However laudatory this rule is in its recognition of the inherent danger that firearms create when handled in proximity to other persons, we cannot apply it to the instant case because the only eyewitness testimony as to the shooting discloses that the gun was not in the exclusive control of the defendant Onesti at the time it discharged. Onesti was the only witness who could testify as to what occurred immediately prior to and as the gun discharged, and he testified that although he may have touched the handle of the weapon, he did not touch the trigger, and the gun discharged while it was being handed to him by Gonzalez. Although Florio and Batelli were in the store they did not see what happened when Gonzalez was wounded. There is also a dispute as to the ownership of the weapon; the plaintiff alleged the gun belonged to Onesti and Onesti testified that it belonged to Gonzalez. There was no other evidence tending to prove ownership of the weapon except the testimony of Batelli and Florio who saw Gonzalez enter with a paper bag.

■■ In any event the only eyewitness to the actual shooting of Gonzalez was Onesti and he testified that although he may have touched the gun he did not cause it to go off. Unable to apply the above-quoted rule to the facts in the instant case, the burden remained on the plaintiff to prove that the decedent was in the exercise of due care at the time he sustained the injury causing his death. (*McInturff v. Chicago Title &*

*Trust Co.* (1968), 102 Ill.App.2d 39, 46, 243 N.E.2d 657.) We find that this burden was not met by the plaintiff as there was no substantial proof with reference to whether Gonzalez was in the exercise of ordinary care immediately prior to the shooting. Neither the testimony of Onesti nor the testimony of Gutierrez to the effect that shortly after the shooting he heard Batelli tell Onesti that he "shouldn't have been playing around", meets this burden. There was no evidence which more strongly supported the plaintiff's allegation that the decedent was free from contributory negligence than supported inferences to the contrary. "It is clear that damages cannot be assessed upon a mere surmise and conjecture as to what possibly happened to cause an injury. The law requires affirmative and positive proof of actionable negligence as to the proximate cause of injuries suffered to warrant an assessment of liability." *Sansone v. Atchison, Topeka & Sante Fe Ry. Co.* (1967), 83 Ill.App.2d 435, 437, 228 N.E.2d 101; *Wilkerson v. Cummings* (1944), 324 Ill.App. 331, 344, 58 N.E.2d 280.

For these reasons the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

McNAMARA, P. J., and MEJDA, J., concur.