(No. 75-CC-0203—)

JAMES D. WHITE, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 13, 1984.*

*Order on petition for rehearing filed January 30, 1986.*

JOSEPH F. CERVENY and JEFFREY A. RABIN, for Claimant.

NEIL F. HARTIGAN, Attorney General (KENNETH D. KOMBRINK, Assistant Attorney General, of counsel), for Respondent.

Roe, C.J.

The Claimant, James D. White, seeks recovery for personal injuries he sustained as a result of a fall on an ice-covered sidewalk at Chicago State University.

On December 28, 1974, the Claimant was both a student at Chicago State University as well as a part-time laboratory assistant employed by the biology department of the University. It appears that at approximately 8:15 a.m. on December 28th, the Claimant exited from the east door of the "D" Building on the Chicago State campus and began to walk in a northerly direction when he fell on the sidewalk which was apparently covered with both ice and snow. That Claimant suffered rather severe injuries as a result of the fall is basically uncontested.

Claimant's first contention, with which we agree, is that the Respondent, in its capacity as owner and operator of the University, owed a duty to the Claimant to exercise reasonable care for his safety. Recognizing that Claimant was both a student and a part-time employee of the University, it cannot be said that he enjoyed the status of less than an invitee. It is well established that an invitee imposes upon the owner of property the duty to use reasonable care and caution in keeping the premises reasonably safe for use by an invitee. The Illinois Supreme Court described the difference between the duty owed an invitee and the

duty owed a licensee in *Ellguth v. Blackstone Hotel, Inc.* (1951), 408 Ill. 343, 347, 97 N.E.2d 290, 293, as follows:

"The materiality of the question of whether plaintiff was an invitee or licensee arises from the fact that a heavier duty of care is placed upon an owner of premises toward an invitee than toward a licensee or trespasser. Toward an invitee the owner of premises must use reasonable care and caution in keeping the premises reasonably safe for use by such invitee; while toward a licensee no duty is owed by such owner, except not to wantonly and wilfully injure him. . . ."

Recognizing that the Claimant was an invitee on the campus and that the State therefore owed a duty to use reasonable care and caution in keeping the premises safe, the question confronting this Court is, given the facts, did the State breach that duty?

The Claimant contends that the Respondent did indeed breach its duty in at least the following particulars: (1) the sidewalk was constructed and maintained in a negligent manner so as to cause an unnatural accumulation of ice and (2) the Respondent negligently and carelessly cleaned the sidewalk of ice.

In *Serage v. Board of Trustees* (1973), 28 Ill. Ct. Cl. 368, 371, this Court stated:

"It is the law of this State that the mere presence of snow and ice accumulating because of natural causes is not such negligence as to make the owner of the property in question liable." *Zide v. Jewel Tea Co.* (1963), 39 Ill. App. 2d 217, 225.

The Claimant here presumably accepts the above proposition, but argues that due to the negligent design of the sidewalk, which resulted in a slope of approximately 12½%, an unnatural accumulation of ice was created. (It should be noted here that the testimony of the campus engineering specialist indicated that the slope of the 12-foot-wide sidewalk was from an elevation of 15 feet at the west edge to 13 feet 6 inches at the east edge. In other words, within a space of 12 feet, the slope is 1½ feet.) The importance of the degree of incline of sidewalks was analyzed by the Appellate

Court of Illinois, First District, First Division, in *McCann v. Bethesda Hospital* (1980), 80 Ill. App. 3d 544, 400 N.E.2d 16. There, the Court found that the slope of the walkway was greater than 7% and that that presented a question of fact as to whether ice formed as a result of "unnatural" accumulation.

Further, the Claimant here alleges that the unnatural accumulation of ice was also a result of the negligent design of the area. Apparently, there were berms (grassy mounds) on the eastern edge of the sidewalk (the sidewalk sloped from west to east) and no adequate drainage where the downward slope of the berms met the slope of the sidewalk. Finally, Claimant argues that the condition of the sidewalk itself was maintained in a negligent manner in that there were depressions in the surface of the sidewalk at the place where Claimant fell (we find this testimony somewhat unclear) in which water would "puddle" and ice would thereafter accumulate. All of this, Claimant contends, caused an unnatural accumulation of ice where he fell.

The Respondent rebuts these contentions. First, it properly argues that in order for Claimant to success-fully maintain that the sidewalk was designed in a careless or negligent manner he must prove that the walkway was not designed in conformity with standards in the industry at the time it was constructed. Claimant has presented no testimony to indicate that the design of the sidewalk and use of the natural sloping drainage were not in conformity with accepted standards in the industry at the time it was constructed. Mr. George Kennedy, an architect and engineer, testified as Claimant's expert witness and it was his opinion that the "area" was so designed to allow water to accumulate adjacent to the mounds. Basically, however, Mr.

Kennedy seemed to suggest that the unevenness of the construction of the sidewalk created ponds in which water could accumulate. We find that the Claimant has not met his burden of proving that the design and construction of the walkway was either negligent or careless.

Having come to that conclusion, it follows that any ice that may have formed on the walk was not due to an unnatural accumulation caused by the State, or more specifically, caused by the State's design of the sidewalk.

In our opinion, Claimant's contention that the State was negligent in failing to properly maintain the sidewalk, thereby allowing depressions to form in which water would accumulate, is a closer question. The State draws our attention to the fact that even Mr. Kennedy, Claimant's expert, admitted that it was difficult to construct a perfectly level sidewalk and, even assuming it was possible, ice might still accumulate on it. It is also true that Mr. Kennedy's analysis and inspection of the walk, in which he noticed the depressions about which he testified, took place in 1980—some five years subsequent to the occurrence. Certainly, the walk might have been in a different state of repair in 1974.

Basically, the State contends that the walk was as level as any other sidewalk and offers two witnesses to that effect. Lonnie Jones, a University security officer, testified that on the date of the accident, he did not observe depressions in the sidewalk where the Claimant fell, nor did he on subsequent tours of the site. William Laseter testified that the "D" Building sidewalk was his responsibility, as groundsman at the University, and that he noticed no depressions in the sidewalk and that it was level.

On the other hand, Mr. Clifford Elam, the grounds

foreman, testified that he knew of the "puddle" holes in the sidewalk.

We accept Mr. Kennedy's opinion (it conforms to our own observations) that it is difficult to construct a perfectly level sidewalk and we suspect that the testimony of the various witnesses with respect to the depressions or holes in the walk is contradictory only in degree. What we believe to be likely is that, whereas the sidewalk was obviously not as smooth as a dance floor, it was also not dangerously defective.

In *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 145 N.E.2d 105, the Illinois Supreme Court set forth in clear language the rule of law applicable to a situation where a person falls on a defective sidewalk. One of the basic questions in determining liability is whether the sidewalk irregularity is too slight to impose a duty on the city to remedy. The Court stated at 11 Ill. 2d 601, 604, 145 N.E.2d 105, 106-07:

"While courts are in marked disagreements as to when the sidewalk irregularity or defect is so slight that the question is one of law, and where it is one of fact for the jury, nevertheless, the decisions recognize that no mathematical standard can be adopted in fixing the line of demarcation, and that each case must be determined upon its own particular facts and circumstances."

Reviewing the record and considering the testimony, we find that the Claimant has not sustained his burden of proof that he fell on a sidewalk that was negligently in need of repair, thereby causing unnatural accumulations of ice.

In summary, our analysis of the transcripts, records and briefs leads us to the conclusion that the Claimant has not proven that the ice on the sidewalk where he slipped resulted from anything but natural conditions. This being our finding, the law is clear. As we stated above, we reiterate here by quoting Claimant's brief:

"There is no liability for injuries resulting from a fall on ice and snow which has accumulated as a result of natural conditions. (*Riccitelli v. Steinfeld* (1953), 1 Ill. 2d 133, 115 N.E.2d 288.) Nor is there a duty to remove natural accumulations of snow and ice. *Foster v. Cynus & Company* (1971), 2 Ill. App. 3d 274, 276 N.E.2d 38."

Claimant also contends, however, that the Respondent breached its duty by negligently and carelessly cleaning the ice from the sidewalk. Claimant properly argues that although Respondent has no "duty" to clear away natural accumulations of ice and snow, if it assumes the responsibility of snow removal, it must perform the task in a reasonable and diligent manner.

The State basically contends that in "salting" the area, it took "reasonable" steps in attempting to keep the area safe and thereby met its duty to Claimant.

The facts are apparently as follows:

During the early morning hours of December 28, the low temperature was 26°F and there was a trace of snow and ice pellets which had fallen on the ground and which continued to fall through the hour of 8:00 a.m. Upon arriving at work in the morning, Mr. Elam, the grounds foreman, noticed the snow and ice and instructed Mr. Laseter, the groundsman, to salt the area. Mr. Laseter spread four bags of salt, each weighing 80 lbs., around the "F" and "D" Buildings and the walks between them. This task was accomplished in approximately 20 minutes.

This is obviously not a situation in which the State did nothing; Claimant simply contends that their efforts were negligent or careless.

We disagree. Mr. Kennedy, Claimant's expert, testified that the proper maintenance would have been to sweep up the snow and physically carry it away, after which the walks should have been salted and "sanded."

Although this may be true given sufficient time, opportunity and resources, we believe under the circumstances that the Respondent did all it could reasonably do. We can insist on nothing more.

The Respondent used the proper procedure in salting the walkways (Mr. George Connell, physical plant director at Western Illinois University, testified that the proper procedure when there are snow and ice conditions and the temperature is above 15°F is to apply salt to melt the ice) and they did so in a diligent manner, having completed the job prior to 8:00 a.m. We find their actions neither negligent nor careless.

We adhere to our underlying philosophy as enumerated in *Serage, supra*, at 371:

"It does not appear from the evidence that the State was negligent in any manner, shape or form. On the contrary, it appears that the State used extraordinary diligence in removing the snow and ice, particularly when it is shown that the whole area could be cleared in approximately 3 hours, but even with the diligent effort made by the State, during a heavy snowstorm it is impossible to keep an area completely free of snow and ice. To impose upon any municipality, university or property owner the impossible burden of keeping their property free of snow and ice at all times would impose a burden that would quickly put them all out of business."

The Court regrets this unfortunate accident, but is of the opinion that this claim must be denied.

Based on the foregoing, it is hereby ordered that this claim be, and is, hereby denied.

## ORDER ON PETITION FOR REHEARING

PATCHETT, J.

This cause comes for hearing upon the petition for rehearing filed herein by the Claimant, and the Court finding that the opinion in this matter was previously rendered denying the claim, and the Court having

considered the petition for rehearing, and the response to the petition for rehearing filed herein, and the Court having carefully considered the record, and the evidence brought forth, and having considered the arguments in the petition and the response, and being fully advised in the premises,

It is ordered that the petition for rehearing be and hereby is denied.