(No. 93-CC-1501—

MICHAEL BEAN and KIMBERLY BEAN, Claimants, *v.*
THE BOARD OF TRUSTEES OF THE UNIVERSITY
OF ILLINOIS, Respondents.

*Order filed December 9, 1998.*

*Order on petition for rehearing filed August 27, 1999.*

MCCOY & BADE (RICHARD D. MCCOY, of counsel), for Claimant.

HEYL, ROYSTER, VOELKER & ALLEN (RICHARD P. KLAUS, Assistant Attorney General, of counsel), for Respondent.

## ORDER

HESS, J.

This complaint arises out of an incident on December 28, 1990, when Michael Bean, then living in Louisville, Kentucky, was visiting the University of Illinois attending a Global Mission Conference. He was there as part of a Presbyterian theological seminary internship. At approximately 5:00 p.m. on that day, Mr. Bean was heading to the dinner hall, which took him to the intersection of Goodwin and Gregory, where he was stepping over a "windrow" of snow and ice abutting the curb. His right foot slipped out from under him and he fell backwards onto the snow and onto the curb.

Upon returning home, the Claimant sought medical attention. On January 31, 1991, he had surgery wherein his vertebrae and C-6 were fused. His spinal cord had been compressed.

Dr. Cowles, a neurosurgeon, testified that the Claimant had suffered pretty severe myelopathy and diagnosed spinal cord compression in the cervical spine. Dr. Cowles removed the disk and extruded material and placed a strut of bone called a fibular wedge. Dr. Cowles explained that the damage will never fully resolve and his object was to prevent a worsening condition, rather than to achieve full resolution. Dr. Cowles indicated the problem was trauma-related. He further opined that the Claimant will never be able to engage in sports again to any significant degree and will further experience permanent sexuality and bowel problems. He also stated his

upper extremity problems will be permanent in terms of weakness and fine motor control.

The Claimant was in a cervical collar for eight weeks and was in a wheelchair for two months. He was in physical therapy for one year and his Kentucky workers' compensation determined that he was 48.87 percent partial permanent disability. The Claimant testified that he used to backpack, canoe, whitewater paddle, camp, dance, work heavy construction and have frequent and energetic sex with his wife.

The Respondent denies liability in this case and further filed four affirmative defenses of which the first, second and fourth affirmative defenses were allowed to be argued. This Court denied the third affirmative defense. The affirmative defenses alleged comparative negligence and further alleged that the natural accumulation of snow and ice was an open and obvious danger and that the Claimant slipped and fell on a natural accumulation of snow and ice.

Gary Biehl is a civil engineer and was in charge of snow and ice removal at the University of Illinois. He testified that the University of Illinois has written procedures for snow removal and these procedures were updated annually. He testified that windrows that are created by snowplows are to be removed by employees.

Further, the facts establish that the Board of Trustees employs grounds tractors to clear snow from sidewalks, and after passes have been made on the sidewalks, the grounds workers will use hand shovels to clear out the intersection down to the pavement.

Operating engineers also work in snow removal using backhoes or loaders, and their first priority is to clear service areas. Once the priority areas are clear, they will

work in intersections. A grounds foreman and an operating engineer foreman work to identify trouble spots. Operating engineers have contact with the supervisors regarding spot work in problem areas in intersections of streets. The service areas are the first priority and the intersection spot work is the last work done by the engineers.

This Court has repeatedly held that the State is not an insurer of individuals who decide to use its facilities. (*Hoekstra v. State* (1984), 38 Ill. Ct. Cl. 156, 159.) The Court has held that "it is the law of this State that the mere presence of snow and ice accumulating because of natural causes is not such negligence as to make the owner of the property in question liable." *Serage v. Board of Trustees* (1973), 28 Ill. Ct. Cl. 368, 371; *White v. State* (1984), 38 Ill. Ct. Cl. 1, 3.

The Claimant argues that the snow removal was performed in a negligent manner and must not result in the unnatural accumulation of snow and ice and cites numerous cases to support his position. It is Claimant's position that the creating of the windrow is an unnatural accumulation of snow and ice and was created by the snow removal of the Board of Trustees.

The Claimant testified that it precipitated for a full day before the accident and the State water survey report shows winter precipitation on December 27, 28, 29 and 30. The Board of Trustees had full crews working on December 27, 28 and 29. The Claimant's argument is weakened by the fact that Claimant testified at trial that he slipped on the snowpacked street. This would seem to place a natural accumulation rule in effect.

However, even if Claimant is given the benefit of the doubt, and had slipped on the snowbank, the Respondent cites an Illinois Appellate Court decision showing there is

no duty to remove such curbside snow. (*Kiel v. City of Girard* (1995), 274 Ill. App. 3d 821, 211 Ill. Dec. 291.) In *Kiel*, the plaintiff slipped and fell on snow that had been plowed next to the curb by the City of Girard, during street and sidewalk clearing operations. In reversing the jury verdict that goes against the manifest weight of the evidence, the Illinois Appellate Court noted that, "the City created a small, but easily visible, mound of snow on the curb as a side effect of its street and sidewalk clearing efforts. There was nothing unusual about the size or placement of this mound. Snow cleared from pathways must be placed somewhere." (*Id.*) The Court further went on to say that "requiring a prompt cleanup of all snow plowed curbside would place an enormous burden on cities, and such a duty would have the consequences of discouraging snow removal. We hold Illinois law imposes no such duty." *Id.*

The facts in the *Bean* case are similar to that of *Kiel*. It is uncontradicted that the Board of Trustees had full snow removal crews out at all times.

The Court finds that the Board of Trustees had no such duty to the Claimant and the claim is denied.

## ORDER

MITCHELL, J.

This matter comes before the Court on Claimants' petition for rehearing. After having reviewed the petition for rehearing, along with Claimants' and Respondent's briefs and memorandums of law, the Court finds no basis for overruling its previous decision. Therefore, the Claimants' petition for rehearing is denied.