IRA WASHINGTON *et al.*, Plaintiffs-Appellants, *v.* ATLANTIC RICHFIELD COMPANY *et al.*, Defendants-Appellees.

First District (4th Division) No. 61293

Opinion filed February 25, 1976.

BURMAN, J., dissenting.

William J. O'Brien and Paul R. O'Malley, both of Chicago, for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (John R. Caffrey, James T. Ferrini, and Stephen D. Marcus, of counsel), for appellees.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal of orders by the Circuit Court of Cook County, in a personal injury suit, denying the plaintiffs' motion to amend their

complaint and granting summary judgment in favor of the defendants and against the plaintiffs.

The issues on appeal are: (1) whether a legal basis of liability may exist in favor of an injured fireman when one fails to keep his premises in a reasonably safe condition and the hazard of fire, and loss of life fighting it, are reasonably foreseeable; (2) whether flagrant violation of fire safety ordinances designed to protect against disastrous fires and the loss of life imply that the ordinance might properly include firemen within its protection, thereby providing a cause of action to the fireman whose injury is proximately caused by the violation; and (3) whether plaintiffs' motion for leave to file an amended complaint should be allowed.

Defendant ARCO had leased the filling station named in this suit to defendant Porter Sledge. Defendant Sledge, in order to increase profits, engaged in the practice of placing as much gasoline in the tank of an auto as it could possibly hold when a "fill-up" was ordered.

At the time in question a customer, Charles Walker, parked his car at pump No. 3 and ordered a "fill-up." Pump No. 3 was defective at the time and had been for some time prior to this occurrence. The automatic shutoff had not been working. If the hose was left unattended, the gasoline would overflow and spill onto the car and the station driveway.

Mr. Yates, the service station attendant in the employ of Sledge, began to fill up Walker's car and left the defective hose unattended. The automatic shutoff failed to function and gasoline poured out of the tank, overflowing onto the car and to the pavement on this August day. When Yates observed the gasoline overflowing, he returned and shut off the pump, but a large amount of spilled gasoline had already collected on the driveway.

According to the pleadings, the facts are in dispute as to what happened next. Mr. Sledge and Mr. Yates claim they permitted the customer, Charles Walker, to take out a cigar, unwrap it, light it and discard the match into the pool of spilled gasoline. Mr. Walker could not be found but he initially claimed at the scene of the occurrence that he was 20 feet away from his auto when he saw the gasoline overflow and spill down the side of the auto. He contended that Mr. Yates started the fire.

When the spilled gasoline caught on fire, it set the auto on fire as well as the pool of gasoline on the apron of the driveway. The heat from the fire burning underneath the gasoline tank caused the gas vapors to expand and caused more gasoline to spill out of the overflow of the auto's gasoline tank. Sledge and his employee were unsuccessful in attempts to put out the fire so they summoned the city fire department.

When firemen Ira Washington and John O'Brien arrived on the scene,

Ira Washington was immediately ordered by Captain Fox to use a pole and attempt to remove the gas tank cap so that the pressure inside the tank could be relieved to prevent a possible explosion of the auto or the gasoline station. Ira Washington was the driver of Truck No. 15, a hook and ladder, which was the third unit to respond to this alarm. John O'Brien was immediately ordered to use a chemical extinguisher containing Ansul and to work in the area of the burning gas tank. The firemen were working against time and both firemen immediately responded to these orders.

As Ira Washington was releasing the cap of the auto's gas tank with the pipe pole, the pressure within the auto's gas tank knocked the cap off and spewed flaming gasoline and gas vapors over an extensive area. Five firemen were burned, including serious injuries to the plaintiffs, Washington and O'Brien.

Ira Washington received third degree burns on his face, neck, arms, legs, back and buttocks. He was burned so severely his skin sloughed off and multiple skin grafts and long periods of hospitalization were required. He received permanent injuries which have prevented him from working. He received a disability pension as a fireman. Plaintiff John O'Brien also received burns to his face, hands, arms and legs.

It was later found ARCO sent its employees to Sledge's station to inspect the premises about one to three times each week. ARCO had never instructed its supervisors or inspectors that "no smoking" signs were required to be posted and none of the ARCO employees required such posting of signs.

On November 30, 1970, a complaint was filed by the plaintiffs in the Circuit Court of Cook County, charging the defendants with: (1) negligently maintaining the gasoline station in question; (2) negligently causing the fire on the premises; (3) negligently violating certain State and local fire safety laws; and (4) causing the injuries to the plaintiffs by negligent action or inaction.

On September 30, 1974, Judge John C. Fitzgerald granted defendants' motion for summary judgment against plaintiffs.

On October 8, 1974, plaintiffs filed a motion to amend their complaint, including a cause of action for willful and wanton misconduct in addition to causes grounded on negligence and statutory violations. Plaintiffs' motion was denied by Judge Fitzgerald on the same day.

Plaintiffs argue that the circuit court's granting of the defendants' motion for summary judgment was error, since a legal basis of liability exists when it is alleged that one has failed to keep his premises in a reasonably safe condition and the hazard of fire, and loss of life fighting it were reasonably foreseeable. We recognize this argument as the gen-

eral rule applied by our Illinois Supreme Court in *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 417.

By the pleadings, there were allegations from which a jury could reasonably find defendants maintained the premises in a dangerous condition (*i.e.*, the leaking gas pump; the absence of "no smoking" signs; the defendants' practice of overflowing on a "fill-up"; and other alleged negligent acts) and the hazard of fire, and injury to those fighting it was reasonably foreseeable.

In *Dini* the Illinois Supreme Court examined the issue of the landowners' liability to firemen for the negligent maintenance of the premises. The court noted that it had last considered the issue in 1892.

It was the feudal concept, in the English common law, that the duty a landowner owed a fireman was as if he were a licensee. The court in *Dini* expressly refused to label a fireman a licensee and rejected the notion that a fireman could not be considered an invitee.

■■ More recently, the Illinois Supreme Court, in *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, imposed upon the possessor of land, as to a policeman or fireman, the same duty which the possessor of land owes to an invitee.

The *Fancil* court accepted the Restatement view that a possessor of land is subject to liability for physical harm caused to invitees, policemen and firemen by a condition of the land if (a) he knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such persons, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger. However, the *Fancil* court further found, under facts different than those in the case at bar, the defendant's conduct did not constitute a failure to exercise due care. Defendant, living in a high crime area, failed to provide adequate lighting for an enclosure on his premises, where a policeman on patrol was shot in a gun fight. The danger to which the officer was subjected was inherent in his occupation and such risk was assumed.

It is said by the defendants in the instant case that a fireman assumes the risk of being injured by a fire which necessitates his presence, and those who negligently started the fire are excused from liability. We cannot accept this argument.

■■ The plaintiffs immediately responded to the call of alarm from defendants' gasoline station, where there was: an auto ablaze in the area of its gas tank, a pool of exposed gasoline near the station's gasoline pumps, and a pump's defective gasoline hose. The plaintiffs, without any knowledge of the leaking hose, responded to orders on how to fight

the fire. It is apparent that the plaintiffs did not even know what risks existed, and therefore, we cannot conclude that the plaintiffs assumed the risks. In any event, there does exist factual issues by which a jury could impose liability stemming from the defendants' negligent conduct. Therefore, it was error for the circuit court to enter summary judgment against the plaintiffs with respect to these claims.

The plaintiffs argue that a separate basis of liability exists based upon the defendants' violations of particular fire safety ordinances which proximately caused the injuries complained of.

Plaintiffs have called our attention to defendants' violation of certain fire safety sections of the Illinois Revised Statutes.

"An Act relating to the investigation and prevention of fire" provides, in pertinent part:

> "No person being the owner, occupant or lessee of any building or other structure * * * shall permit such building or structure by reason of * * * lack of proper repair, or any other cause to become especially liable to fire, or to become liable to cause injury or damage by collapsing or otherwise. And no person * * * shall keep * * * on such premises, combustible or explosive material or inflammable conditions, which endanger the safety of said buildings or premises * * *." Ill. Rev. Stat. 1969, ch. 127½, §9.

"An Act to regulate the storage * * * of gasoline * * *" provides, in pertinent part:

> "It shall be unlawful for any person * * * to keep * * * or use any crude petroleum * * * or other like volatile combustibles * * * in such a manner or under such circumstances as will jeopardize life or property." Ill. Rev. Stat. 1969, ch. 127½, §153.

Plaintiffs also direct us to defendants' violation of certain fire safety provisions of the municipal code of the City of Chicago.

The Fire Protection Regulations of the municipal code provide, in pertinent part:

> "* * * [O]ils, paints, varnishes and similar fluids having a flash point above one hundred fifty degrees Fahrenheit * * * shall, if stored in any building used for other purposes, in quantities exceeding ten barrels aggregate, be placed in approved metal tanks, and shall be drawn only by the use of approved pumps or other approved devices * * *." Municipal Code of Chicago. ch. 90, §30.

Chapter 60 of the municipal code provides:

> "Flammable liquids shall be drawn from tanks by pumps or

other systems, which shall be equipped with controlling apparatus and pipe shall be so arranged as to control the quantity of discharge and to prevent leakage * * *." Municipal Code of Chicago, ch. 60, §101.

The Smoking Restrictions section of the Fire Protection chapter of the municipal code provides, in pertinent part:

"Smoking or the carrying of a lighted cigar, pipe or cigarette is prohibited: (a) In every hazardous use room, building or premises * * *." Municipal Code of Chicago, ch. 90, §62.

The Smoking Restrictions of the municipal code further provide:

"Standard 'No Smoking' signs shall be conspicuously posted in every room, building or premises where smoking is prohibited * * *." Municipal Code of Chicago, ch. 90, §63.

Lastly, the General Provisions of the Fire Safety Regulations of the municipal code provide:

"It shall be unlawful to continue the use of or occupy any building, structure or place which does not comply with those provisions of this code which are intended to prevent a disastrous fire or loss of life in case of fire * * *." Municipal Code of Chicago, ch. 90, §3.

■■ Violation of a statute designed for the protection of human life or property is prima facie evidence of negligence, and the party injured thereby has a cause of action, provided he comes within the purview of the particular statute or ordinance and the violation was the proximate cause of the injury.

Since the municipal ordinance here is general in its terms and has the avowed purpose of preventing loss of life in case of fire, regardless whose life it may be, the ordinance properly includes firemen within its protection. This can similarly be said of the State statutes.

In accordance with this approach, our Supreme Court in *Dini* allowed recovery where a fireman's injury was proximately caused by the defendant's violation of certain provisions of the municipal code of Chicago. The Supreme Court specifically held that violation of the municipal code's Fire Safety Regulations provided for a basis of liability in favor of firemen, since section 3 of chapter 90 is general in its terms, and is not limited in its operation to any particular class of persons.

We therefore recognize, as an additional basis of liability, defendants' alleged violations of the particular fire safety ordinances which are alleged to have proximately caused the injuries to the plaintiffs.

By the pleadings there were allegations from which a jury could reasonably find that defendants were violating certain fire safety statutes and ordinances, and such violations proximately caused the injuries of

plaintiffs Washington and O'Brien. Since the case presented genuine issues of fact which may provide for a basis of imposing liability, it was reversible error for the trial court to enter summary judgment against the plaintiffs with respect to these claims.

██ Plaintiffs request their motion to amend the complaint be allowed. Section 46, the "Amendments" section, of the Illinois Civil Practice Act allows amendments adding new causes of action before final judgment. (Ill. Rev. Stat. 1969, ch. 110, §46.) Inasmuch as the trial court's summary judgment is hereby overruled, vacated and set aside, plaintiffs' motion to amend their complaint should be allowed.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is reversed. This cause is remanded to the Circuit Court with directions to allow plaintiffs' amendment to their complaint.

Reversed and remanded with directions.

ADESKO, J., concurs.


Mr. JUSTICE BURMAN, dissenting:

The issue presented for review is whether a fireman, who suffers personal injuries while combating a fire, may hold a landowner liable for negligence in causing the fire which brought him to the premises. The majority answers this question in the affirmative, and I must respectfully dissent.

As stated in the majority opinion, the defendants are ARCO, the lessor, and Sledge, the lessee. Briefly, the pleadings, depositions and exhibits reveal the following chain of events. On the day in question Charles Walker parked his car on the premises and ordered a fill-up. Mr. Yates, the station attendant, inserted the gas pump hose in the car's tank and left the pump running unattended. Because the hose had a malfunctioning shutoff valve, the gas tank overflowed and spilled a large amount of gasoline on the car and station pavement. When Yates observed the problem, he returned to the pump and manually shut it off. Thereafter, the gasoline ignited. The flaming automobile then was pushed to a location ten feet from the pumps to minimize the chance of an explosion, and the car's gas cap was put back in place. After an unsuccessful attempt to extinguish the fire, the station attendants summoned the fire department. Upon arriving the fire captain ordered plaintiff, Ira Washington, to grab a pole and remove the car's gas cap. As Washington was fulfilling this order, pressure from within the auto's gas tank knocked the gas cap off and spewed flaming gasoline over an extensive area. Plaintiffs were burned badly as a result. The pleadings, depositions and

exhibits also suggest the violation of several safety statutes and ordinances.

The majority relies primarily on the decision in *Dini v. Naiditch,* 20 Ill. 2d 406, 170 N.E.2d 881, and claims that case stands for the proposition that a landowner or occupier is liable to a fireman for negligence in causing the fire which brought the fireman to the premises. The majority asserts this to be true whether the negligence is grounded in the common law or on the violation of an enactment. I believe said reliance is misplaced, for a careful reading of that case and a review of other recent decisions compels a contrary conclusion.

Before entering summary judgment for defendants, Judge John C. Fitzgerald entertained extensive argument on the issue. At the conclusion of said argument, the Judge cogently stated to plaintiffs' attorney:

> "[I]f you could point out one instance the breach of which after the firemen reached the premises, caused these injuries, that proximately caused the injury. That is the missing link. Now that was present in the Dini case."

In *Dini,* referred to above, one fireman was killed and another injured when an inadequately constructed stairway collapsed upon them while fighting a conflagration on the defendants' premises. The record additionally revealed that the defendants had failed to provide fire doors or extinguishers, permitting the accumulation of trash in the corridors, and stored benzene in close proximity to the stairway. In holding the defendants liable, the Illinois Supreme Court rejected past law relegating firemen to the status of licensee, and held that firemen are entitled to the same rights as an invitee. Rephrased, the court held that as to a fireman rightfully on the premises and fighting a fire where he might reasonably be expected to be, a landowner owes a duty of reasonable care to maintain his property so as to prevent his injury. *Dini* does not create liability on the part of the landowner for negligence in causing a fire. Rather, as the court stated, liability attaches for a lack of care in the maintenance of the property which results in injury to the fireman. Thus, in *Dini* liability was predicated upon a combination of factors, the foremost of which was the collapse of the inherently defective stairway.

This point is perhaps best evidenced by the Supreme Court's express adoption of the rule enunciated in *Meiers v. Fred Koch Brewery* (1920), 229 N.Y. 10, 127 N.E. 491. In *Meiers,* there too the court allowed recovery by a fireman for injuries suffered while fighting a fire on the defendant's premises. However, liability was not predicated upon the negligent creation of a fire. Rather, the negligence involved was the failure to cover a hole into which the fireman fell. Thus, recovery was based

on tort liability independent of the fire itself. Similarly, in *Shypulski v. Waldorf Paper Products Co.* (1951), 232 Minn. 394, 45 N.W.2d 549, a case upon which *Dini* also relied, a fireman was killed by a concrete wall which collapsed while he was fighting a fire. The defendants knew of the dangerous condition of the wall, and yet they failed to warn the fireman. In holding that the fireman had a cause of action, the court stated: "Although firemen assume the usual risks incident to their entry upon premises made dangerous by the destructive effect of fire, there is no valid reason why they should be required to assume the extraordinary risk of hidden perils of which they might easily be warned." 232 Minn. 394, 401, 45 N.W.2d 549, 553.

Since our Supreme Court's decision in *Dini*, several other cases have held that a fireman cannot predicate a personal injury action solely on another's negligence in causing a fire. For example, in *Netherton v. Arends*, 81 Ill. App. 2d 391, 225 N.E.2d 143, the plaintiff fireman and his wife appealed from an adverse judgment on the pleadings. The acts of negligence which plaintiffs charged in their complaint were substantially as follows: (1) that defendants caused or knowingly permitted a large quantity of inflammable straw to be placed against the foundation of the dwelling in such a manner as to create a fire hazard; (2) like charges as to having large quantities of highly inflammable and volatile gases, combustible plastic materials, certain acids, ether, and gunpowder; and (3) otherwise negligently and carelessly maintained said premises so as to cause or permit the same to catch fire. The parallel with the instant complaint is unmistakable. In *Netherton* the appellate court affirmed the decision of the court below holding that the complaint did not state a cause of action. The court noted that in each case where liability had been imposed, the negligent act or omission causing the fire was not the act or omission causing the injury. As stated therein, which is equally appropriate here:

> "Epitomizing, the duty of an owner or occupant of premises to an invitee fireman is a duty to warn of known latent defects in the premises which with a reasonable degree of forseeability might cause injury to him, or to avoid defects in the premises which with a reasonable degree of forseeability might cause injury either to him or any other invitee, or to use ordinary care to have his premises in a reasonably safe condition for use in a manner consistent with the purpose of the express or implied invitation. [Citation.]" 81 Ill. App. 2d 391, 396, 225 N.E.2d 143, 146.

In *Horcher v. Guerin* (1968), 94 Ill. App. 2d 244, 236 N.E.2d 576, the appellate court reached the same conclusion. In response to a contention substantially identical to the one at bar, the court stated:

"We do not read *Dini*, however, to stand for the proposition that the landowner may be held liable to a fireman for negligence in causing the fire which brought the fireman to the premises. It is held, almost without exception, that a landowner or occupier is not liable in such case. [Citations.]" (94 Ill. App. 2d 244, 247-48, 236 N.E.2d 576, 578.)

The rationale for the rule is quite clear. As stated in *Horcher:*

"The duties of a fireman expose him to risk of harm from fire: this is a reasonable risk of his occupation. The landowner owes a fireman, as well as an invitee, a duty not to expose him to an unreasonable risk of harm—that is, a duty to remove hidden, unusual or not to be expected dangers from the premises, or to give adequate warning thereof." [Citations.] (94 Ill. App. 2d 244, 248, 236 N.E.2d 576, 579.)

The court further held that the same rule applies to charges of negligence by reason of the violation of a statute or ordinance.

In *Erickson v. Toledo, Peoria & Western R.R.* (1974), 21 Ill. App. 3d 546, 315 N.E.2d 912, the plaintiff fireman appealed from a dismissal of his complaint for failure to state a cause of action. The appellate court affirmed noting that the allegations of the complaint related solely to the cause of the fire or factors contributing to its severity. The court stated that liability can be imposed only where the fireman is exposed to undue risks of injury beyond those inevitably involved in fighting a fire.

Any lingering beliefs that the above appellate court decisions have deviated from our Supreme Court's holding in *Dini* have been dispelled recently by that court. In 1975 the Illinois Supreme Court handed down its decision in *Fancil v. Q.S.E. Foods, Inc.*, 60 Ill. 2d 552, 328 N.E.2d 538, wherein the plaintiff policeman appealed from the dismissal of his complaint for failure to state a cause of action. In *Fancil* a policeman sought damages for injuries sustained when he was ambushed by criminals. His complaint alleged in pertinent part that the defendant landowner knew criminals frequented his premises, that the defendant negligently permitted his premises to remain unlighted, and that as a direct and proximate cause of the defendant's failure to light his premises, the policeman was ambushed and injured while inspecting said premises for unauthorized persons. In affirming the decision of the lower court, the Supreme Court noted that the fact that the property was not illuminated was obvious to all.. The court further added:

"The risk to which the decedent was subjected because of the conditions which existed upon the defendant's premises was the same risk which every police officer encounters while conducting security checks in both residential and commercial areas. The

danger of being ambushed by criminals lurking in poorly illuminated areas, in shadows or behind objects is a risk inherent in the occupation. Hence, *the danger to which the decedent was subjected was not an unreasonable risk for a police officer."* (Emphasis supplied.) (60 Ill. 2d 552, 558.)

In reaching this decision, the court relied expressly on the holdings in *Netherton* and *Horcher* cited above.

Finally, in *Marquart v. Toledo, Peoria & Western R.R. Co.* (1975), 30 Ill. App. 3d 431, 333 N.E.2d 558, the defendant railroad appealed from a denial of summary judgment against plaintiffs' firemen. With regard to Count III of the complaint, the appellate court held that a fireman, who is injured while fighting a fire, cannot recover damages for negligence in causing or aggravating the fire. Accordingly, the court reversed the denial of summary judgment.

The foregoing cases demonstrate beyond dispute that plaintiffs in the instant case do not have a cause of action based on common law negligence. It is indeed unfortunate that they suffered extensive injuries. Nevertheless, plaintiffs assumed the risk of said injuries, for said risks were inherent in their occupation. The majority's assertion that "* * * the plaintiffs did not even know what risks existed * * *" is without basis in the record. Every action of the firemen upon arrival at the scene showed an acute awareness of the dangers involved.

The majority also accepts as a separate basis of liability the violation of several ordinances by defendants. Again I must disagree. As stated above, a landowner may not be held liable to a fireman for negligence in causing a fire which brings the fireman to the premises. This is true whether the negligence be based on the common law or the violation of an enactment. (*Horcher v. Guerin,* 94 Ill. App. 2d 244, 236 N.E.2d 576.) In the case at bar, each violation of an ordinance cited by plaintiffs related to the negligent creation of a fire or a fire hazard. Accordingly, said violations do not give rise to a cause of action.

For the foregoing reasons, I would affirm the decision of the court below.