(No. 48392.—

IRA WASHINGTON *et al.*, Appellees, v. ATLANTIC
RICHFIELD COMPANY *et al.*, Appellants.

*Opinion filed Nov. 15, 1976.—Rehearing denied Apr. 1, 1977.*

CREBS, J., took no part.
DOOLEY and CLARK, JJ., dissenting upon denial of rehearing.

Clausen, Miller, Gorman, Caffrey & Witous, of Chi-
cago (James T. Ferrini, Stephen D. Marcus, of counsel), for
appellant Atlantic Richfield Company.

Paul R. O'Malley and John G. Phillips Ltd., of Chicago (Sidney Z. Karasik, of counsel), for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiffs, Ira Washington and John O'Brien, are Chicago firemen who were seriously burned while engaged in extinguishing a fire in and around an automobile whose driver had pulled into a filling station to purchase gas. The complaint named four defendants: Atlantic Richfield Company, the owner of the station; Porter Sledge, the lessee and operator of the station; Richard Yates, an employee of Sledge; and Charles Walker, the driver of the automobile. Summons was not served on Yates or Walker.

The trial court entered summary judgments in favor of the defendants and against the plaintiffs. The appellate court reversed, with one judge dissenting (36 Ill. App. 3d 344), and we granted leave to appeal.

The facts that appear from the depositions and affidavits before the court upon the motion for summary judgment may be summarized as follows:

Yates inserted the hose in the gas tank of Walker's automobile, and then left the car unattended while he serviced another car at a different pump. The shut-off valve in the hose was defective, and failed to operate when the tank became full, with the result that gasoline began to overflow from the tank. When Yates observed this, he returned and shut off the pump manually, but before he did so a puddle of gasoline had accumulated on the pavement beneath and around the car. At this point Walker lit a cigar, and discarded the match, which fell in the pool of gasoline and ignited it. The fire spread to the car, the heat from the fire caused the gasoline in the tank to expand, and the expansion in turned caused more gasoline to spill out of the car's tank.

The fire department was summoned, and the plaintiffs, Ira Washington and John O'Brien, and several other

firemen, arrived at the scene. After the fire began, Yates had put the cap back on the gas tank. Washington was directed by his battalion chief to try to remove the cap in order to relieve the pressure in the tank and thus avoid an explosion, a standard procedure in fires of this kind. As Washington began to remove the cap, the pressure of the tank blew it off and flaming gasoline spread over an extensive area, injuring the plaintiffs.

The complaint alleged negligence on the part of the defendants in using a defective pump, in failing to prevent the gas tank from overflowing and in permitting Walker to smoke while the car was being filled.

The question presented by this appeal is whether the liability of a possessor of land for injuries to a fireman extends to acts of negligence which cause the fire. In arguing that it does, the plaintiffs place their chief reliance on *Dini v. Naiditch* (1960), 20 Ill. 2d 406, which also involved firemen injured while fighting a fire. In that case a fire in the upper stories of a building was blocking access to a staircase which led to the ground floor, thus preventing occupants from escaping to the street. As two firemen were ascending the stairway to direct a hose at the flames, the stairway, which was not properly attached to the adjacent supporting wall, suddenly collapsed and fell to the ground floor, killing one of the firemen and severely burning the other.

The court held that under those circumstances it was improper for the trial court to enter a judgment *n.o.v.* for the defendants. The predicate of our decision was that a fireman was no longer to be regarded strictly as a licensee, as had previously been the case in Illinois, but that a landowner was liable "for failure to exercise reasonable care in the maintenance of his property resulting in the injury or death of a fireman rightfully on the premises, fighting the fire at a place where he might reasonably be expected to be." 20 Ill. 2d 406, 416-17.

In applying its general theory of liability to the facts

of the case at hand, the court in *Dini* made the following comment:

> "In the instant case, from the evidence previously noted that defendants failed to provide fire doors or fire extinguishers, permitted the accumulation of trash and litter in the corridors, and had benzene stored in close proximity to the inadequately constructed wooden stairway where the fire was located, the jury could have found that defendants failed to keep the premises in a reasonably safe condition and that the hazard of fire, and loss of life fighting it, was reasonably foreseeable." 20 Ill. 2d 406, 417.

Although the cause of the fire in the *Dini* case was not known, some of the items mentioned in the statement quoted above relate to acts of negligence which might have been contributory causes of the fire, rather than to negligence in the failure to maintain the premises in a safe condition, and the opinion thus gives support to the plaintiffs' position. Decisions subsequent to *Dini,* however, have not so interpreted it.

In *Netherton v. Arends* (1967), 81 Ill. App. 2d 391, decided by the Appellate Court for the Fourth District, suit was brought by a fireman to recover damages for injuries caused by smoke inhalation while fighting a fire at the defendants' premises. The asserted basis of liability was that negligence in the storage of combustibles was responsible for causing the fire. The appellate court rejected this theory of liability, saying:

> "We do not think that Dini holds or intended to hold that negligently creating a fire hazard or causing a fire ipso facto creates a liability upon an owner or occupant to an invitee fireman for injuries received in the performance of his duties." (81 Ill. App. 2d 391, 395.)

And the court added:

> "There is no charge that the fumes, gases or

smoke produced by the fire were unusual in any manner or different in type, quantity, quality or amount than those of any ordinary fire. In the absence of such a charge, the hazards which the fireman faced were only those hazards incidental to the employment that was his." (81 Ill. App. 2d 391, 396.)

The Appellate Court for the Second District reached a similar conclusion in *Horcher v. Guerin* (1968), 94 Ill. App. 2d 244. In the course of fighting a fire in a vacant and boarded-up building, a fireman attempting to break a second-story window from the outside was struck by a splinter of glass and lost his sight in one eye. There, too, plaintiff argued that liability was established under the *Dini* decision. The court held to the contrary, saying:

"We do not read Dini, however, to stand for the proposition that the landowner may be held liable to a fireman for negligence in causing the fire which brought the fireman to the premises. It is held, almost without exception, that a land-owner or occupier is not liable in such case. [Citations.] ***

The duties of a fireman expose him to risk of harm from fire: this is a reasonable risk of his occupation. The landowner owes a fireman, as well as an invitee, a duty not to expose him to an unreasonable risk of harm—that is, a duty to remove hidden, unusual or not to be expected dangers from the premises, or to give adequate warning thereof. [Citations.] " 94 Ill. App. 2d 244, 247-48.

A division of the First District other than that which decided the present case also adopted the rule that a fireman may not recover for injuries on the ground that the fire was caused by the defendant's negligence. *Erickson v. Toledo, Peoria & Western R.R.* (1974), 21 Ill. App. 3d 546.

The plaintiffs characterize the appellate court decisions referred to above as "unwarranted deviations" from *Dini*. In *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, however, we applied the same principle as that employed in those decisions in the analogous situation of a suit to recover damages for the death of a policeman slain in an ambush while making a routine security check. We observed that the risk to which the decedent had been subjected was one "inherent in the occupation," and we inferentially approved the reasoning found in *Netherton* and *Horcher*. (60 Ill. 2d 552, 558.) Since most fires occur because of negligence, to hold a landowner liable to a fireman would impose a heavy and unreasonable burden upon the owner. *Horcher v. Guerin* (1968), 94 Ill. App. 2d 244, 248.

The position taken in the cases referred to above and in the dissenting appellate court opinion in the present case is the same as that taken in virtually every other jurisdiction in which the question has been considered. (See, *e.g., Hass v. Chicago & North Western Ry. Co.* (1970), 48 Wis. 2d 321, 179 N.W.2d 885; *Spencer v. B. P. John Furniture Corp.* (1970), 255 Ore. 359, 467 P.2d 429; *Krauth v. Geller* (1960), 31 N.J. 270, 157 A.2d 129; *Chesapeake and Ohio Ry. Co. v. Crouch* (1968), 208 Va. 602, 159 S.E.2d 650; Annot., 86 A.L.R.2d 1205 (1962); Prosser, Torts sec. 61, at 397 (4th ed. 1971).) We therefore hold that while a landowner owes a duty of reasonable care to maintain his property so as to prevent injury occurring to a fireman from a cause independent of the fire he is not liable for negligence in causing the fire itself.

The complaint also alleges, however, that the defendants violated certain provisions contained in the laws of Illinois and the Municipal Code of the city of Chicago relating to fire prevention (see Ill. Rev. Stat 1975, ch. 127½, pars. 9 and 153; Municipal Code of Chicago, secs. 60–100, 60–101, 90–30, 90–62, 90–63, 127–8 and 127–11), and the plaintiffs contend, again relying on *Dini v. Naiditch,* that these alleged violations generate a tort

liability for damages. The appellate court accepted this contention.

The defendants are charged with having caused the plaintiffs' injuries by using a defective gasoline pump, permitting the gas tank to overflow, and allowing the driver of the car to smoke. These acts relate only to the manner in which the fire was caused. We have rejected as overly broad a reading of *Dini v. Naiditch* which would permit liability to be predicated upon negligence in causing a fire as a matter of common law. We see no reason for a different result where the conduct that causes the fire is also a violation of a statute or an ordinance. As we stated previously, the function of a fireman is to deal with fires, and he assumes the risks normally associated with that function when he enters upon that employment. A criminal statute or penal ordinance requiring that measures be taken for the prevention of fires may bear upon the question whether a landowner's conduct amounts to less than reasonable care where a duty to exercise such care is owed to the plaintiff. But such a statute does not in itself enlarge the class of persons to whom that duty is owed beyond that which exists at common law. (See *Horcher v. Guerin* (1968), 94 Ill. App. 2d 244, 248-50; *Buren v. Midwest Industries, Inc.* (Ky. 1964), 380 S.W.2d 96.) As the court said in the latter case:

> "That compliance with fire safety ordinances will necessarily have the effect of reducing the hazards of fire-fighting, however, is no more than incidental to the primary objective in fire prevention and control. The fact is that in the performance of his official function the fireman is a part of rather than an object of fire prevention and control." 380 S.W.2d 96, 98.

The judgment of the appellate court is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.

### Dissenting Opinion Upon Denial of Rehearing

MR. JUSTICE DOOLEY, dissenting:

The issue presented by this appeal, as we see it, is the status of a fireman lawfully on the premises fighting a fire at a place where he might reasonably be expected to be. To differentiate between "acts of negligence which might have been contributory causes of the fire" and "negligence in the failure to maintain the premises in a safe condition" is an artificial and meaningless distinction in the law of torts. Moreover, it appears anomalous to say that "the opinion [*Dini v. Naiditch* (1960), 20 Ill. 2d 406,] gives support to plaintiffs' position" and that "[d]ecisions [of appellate courts] subsequent to *Dini,* however, have not so interpreted it."

This court should not look to appellate court opinions for an issue it itself has decided. Yet, it is to the opinions of an intermediate court of review that the majority refers us.

We are constrained to note the reference of the majority to *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, and reference to the risk as one "inherent in the occupation." This court has on many occasions announced that the assumption of risk concept is confined to negligence actions involving a contractual or employment relationship. (See *Pennsylvania Co. v. Backes* (1890), 133 Ill. 255, 262; *Chicago & Eastern Illinois R.R. Co. v. Randolph* (1902), 199 Ill. 126, 131; *B. Shoninger Co. v. Mann* (1905), 219 Ill. 242, 266; *Conrad v. Springfield Consolidated Ry. Co.* (1909), 240 Ill. 12, 17; *O'Rourke v. Sproul* (1909), 241 Ill. 576, 580; *Barrett v. Fritz* (1969), 42 Ill. 2d 529, 534.) We refer to negligence actions as distinguished from strict liability in tort cases, where, of course, assumption of risk may be an affirmative defense.

*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418.

In *Barrett,* it was pointed out how most legal writers urge the abolition of this concept. See James, *Assumption of Risk,* 61 Yale L.J. 141, 169 (1952); Wade, *The Place of Assumption of Risk in the Law of Negligence,* 22 La. L. Rev. 5 (1961); Prosser, Torts sec. 67, at 456 (3d ed. 1964); 2 Harper & James, Torts 1191 (1956) and 2 Supplement 119 (1968); Green, *Assumed Risk as a Defense,* 22 La. L. Rev. 77 (1961).

Professor James, in both his texts (2 Harper & James, Torts 1191-92 and 2 Supplement 119), and in 61 Yale L.J. 141, 169, makes this observation:

> "Except for express assumption of risk, therefore, the term and the concept should be abolished. It adds nothing to modern law except confusion. For the most part the policy of individualism it represents is outmoded in accident law; where it is not, that policy can find full scope and far better expression in other language."

Even if considered viable, assumption of risk depends upon the presence of each of the following factors: (1) There is no assumption of the risk of another's negligence; (2) there must be a voluntary exposure to a given danger; and (3) there must be knowledge of the risk involved. Stated otherwise, there must be a willingness to expose oneself to the particular risk.

As we have observed, this case turns on whether a fireman, on duty at a place on the occupier's premises where he might reasonably be expected to be, is a licensee or invitee. In *Dini v. Naiditch* (1960), 20 Ill. 2d 406, this court expressly overruled "the archaic licensee concept" to which firemen had previously been consigned. (20 Ill. 2d 406, 417.) On the contrary, it announced the duty of reasonable care and stated:

> "Inasmuch as firemen obviously confer on landowners economic and other benefits which are a recognized basis for imposing the common-law duty of reasonable care (Restatement, Torts,

sec. 343a; Harper, Torts, sec. 96; Prosser, 26 Minn. L. Rev. 573, 574; 35 Mich. L. Rev. 1161), we would agree with the court in the *Meiers* case [229 N.Y. 10, 127 N.E. 491], and with its adherents, that an action should lie against a landowner for failure to exercise reasonable care in the maintenance of his property resulting in the injury or death of a fireman rightfully on the premises, fighting the fire at a place where he might reasonably be expected to be." (20 Ill. 2d 416-17.)

Obviously, a fireman has the status of invitee.

As if that were not enough, there are the allegations of violations of ordinances and laws. These were considered in *Dini* "as a second basis of liability." (20 Ill. 2d 406, 417.) There it was held that certain safety ordinances embraced firemen. We see no reason why firemen should not come within the ambit of laws concerning fire protection. The majority opinion not only departs from *Dini*, but takes a Paul Bunyan step backwards.

Here is put in focus the need to consider that departure from negligence principles through the label given the person on the property.

The common law distinctions between trespasser, licensee and invitee had their origins in a culture whose standards were a heritage of feudalism. According to Professor Bohlen, in his Studies in the Law of Torts 163 (1926), the concept was "that the owner was sovereign within his own boundaries, and as such might do as he pleased on or with his own domain."

With the multiple industrial accidents which were part and parcel of the Industrial Revolution, negligence principles not only had a new stimulus, but a far broader acceptance. Courts of the mid-Victorian era are generally regarded as the genesis of the three classifications of visitors—trespasser, licensee and invitee. *Sweeny v. Old Colony & Newport R.R. Co.* (1865), 92 Mass. (10 Allen)

368, and *Indermaur v. Dames* (C.P. 1866), 14 L.T.R. (n.s.) 484, *aff'd* (Exch. Ch. 1867), 16 L.T.R. (n.s.) 293.

Urban society with its close-living conditions gave rise to new individual and economic relationships. Inroads in the classical, common law categories became a necessity. Today the status of the person is not dependent on his relationship to property. "Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.' " *Kermarec v. Compagnie Generale Transatlantique* (1959), 358 U.S. 625, 631, 3 L. Ed. 2d 550, 555, 79 S. Ct. 406, 410.

It has been observed that complexities and confusion have resulted not from the application of the original common law rules, but from "attempts to apply just rules in our modern society within the ancient terminology." (*Rowland v. Christian* (1968), 69 Cal. 2d 108, 117, 443 P.2d 561, 567, 70 Cal. Rptr. 97, 103.) As will be manifest herein, it was not until the 20th century that concern for human safety began to transcend the landowner's freedom. As a result, exceptions were carved into the strict common law categories.

A trespasser is a person who goes upon the premises of another without invitation or permission. (*Illinois Central R.R. Co. v. Eicher* (1903), 202 Ill. 556; *Darsch v. Brown* (1928), 332 Ill. 592.) The occupier of the premises owes a trespasser no duty until his presence on the premises is known. Then, that duty is not to wilfully or wantonly injure him. *Morgan v. New York Central R.R. Co.* (1927), 327 Ill. 339; *Darsch v. Brown* (1928), 332 Ill. 592; *Briney v. Illinois Central R.R. Co.* (1948), 401 Ill. 181.

Eventually the harshness of this doctrine created exceptions, particularly in the case of minors. Where the occupier knows or should know that children habitually frequent the dangers existing on land and this is likely to cause injury to them, it becomes the duty of that occupier

to exercise due care or otherwise protect the children from injury. *Wagner v. Kepler* (1951), 411 Ill. 368; *McDermott v. Burke* (1912), 256 Ill. 401.

In Illinois the attractive nuisance doctrine was abolished with the advent of *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 624, which exacted ordinary care by the occupier towards children whom he knew or might know would be on the premises.

The licensee was one upon the premises for his own purposes with the consent of the occupier and not for some purpose connected with the occupier's activity or business. (*Pauckner v. Wakem* (1907), 231 Ill. 276; *Milauskis v. Terminal R.R. Association* (1919), 286 Ill. 547; *Ellguth v. Blackstone Hotel, Inc.* (1951), 408 Ill. 343.) Towards the licensee the duty of the occupier was to refrain from wilfully and wantonly injuring him. (*Illinois Central R.R. Co. v. Eicher* (1903), 202 Ill. 556; *Briney v. Illinois Central R.R. Co.* (1948), 401 Ill. 181; *Ellguth v. Blackstone Hotel, Inc.* (1951), 408 Ill. 343, 347.) To this duty there likewise arose exceptions. Where the occupier was guilty of active negligence, his duty became that of ordinary care. (See *Moore v. Ohio Oil Co.* (1926), 241 Ill. App. 388, 391, and *Ryan v. Chicago & Northwestern Ry. Co.* (1942), 315 Ill. App. 65, 77; *Kay v. Ludwick* (1967), 87 Ill. App. 2d 114.) So also is there the duty to disclose and warn licensees against hidden dangers of which the land occupier has knowledge. (*Seipp v. Chicago Transit Authority* (1973), 12 Ill. App. 3d 847.) Such a failure to disclose may constitute wilfull and wanton misconduct. *Schoen v. Harris* (1969), 108 Ill. App. 2d 186; *Hessler v. Cole* (1972), 7 Ill. App. 3d 902. '

A social guest was owed no greater duty than was owed a licensee or trespasser. (*Madrazo v. Michaels* (1971), 1 Ill. App. 3d 583; *Kay v. Ludwick* (1967), 87 Ill. App. 2d 114.) Witness, however, the expansion of the term "invitee" to embrace an aunt who came to help her niece in a house-moving project. (*Madrazo v. Michaels* (1971), 1

Ill. App. 3d 583.) Other jurisdictions have abolished the social guest classification and hold the occupier to the duty of ordinary care. See, for illustrative purposes, *Haffey v. Lemieux* (1966), 154 Conn. 185, 224 A.2d 551, 21 A.L.R.3d 1091 (1968); *Foster v. LaPlante* (Me. 1968), 244 A.2d 803; *Telak v. Maszczenski* (1966), 248 Md. 476, 237 A.2d 434; *Beatty v. Dixon* (Okla. 1965), 408 P.2d 339; *Wood v. Camp* (Fla. 1973), 284 So. 2d 691.

To an invitee the occupier owed the duty to exercise reasonable care for his safety while on that part of the premises required for this purpose. (*Paukner v. Wakem* (1907), 231 Ill. 276; *Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153, 157.) So also towards the invitee the occupier owed a duty of maintaining the premises in a reasonably safe condition. (*Perminas v. Montgomery Ward & Co.* (1975), 60 Ill. 2d 469, 471.) Thus we have a series of labels, as well as exceptions to each. It was simple justice which dictated the exceptions.

It would seem that the time to abolish all labels is now. There is compelling authority for this position. In England, the distinction between licensee and invitee was abolished by statute in 1957 (Occupiers' Liability Act, 5 & 6 Eliz. 2, c. 31, 55 20th Century Statutes 831). Hughes, in *Duties to Trespassers: A Comparative Survey and Revaluation,* 68 Yale L.J. 633 (1959), in commenting upon this statute observed:

> "It [the duty of the occupier] ought not to be imported into the law as a categorical proposition, for the answer to the question of whether the defendant has discharged his duty should depend on the totality of the circumstances. The mechanical application of the traditional categories of visitor, and of such concepts as traps and unusual dangers, is a manifestation of [a] lamentable tendency *** ."

The English Law Reform Committee, out of which emanated this statute, concluded with these words: "[The present law embarrasses justice] 'by requiring what is essentially a question of fact to be determined by

reference to an artificial and irrelevant rule of law.' " McDonald & Leigh, *The Law of Occupiers' Liability and the Need for Reform in Canada,* 16 U. Toronto L.J. 55, 65 (1965).

*Rowland v. Christian,* taking a cue from the United States Supreme Court in *Kermarec,* struck down the distinctions between trespasser, licensee and invitee, stating:

"There is another fundamental objection to the approach to the question of the possessor's liability on the basis of the common law distinctions based upon the status of the injured party as a trespasser, licensee, or invitee. Complexity can be borne and confusion remedied where the underlying principles governing liability are based upon proper considerations. Whatever may have been the historical justifications for the common law distinctions, it is clear that those distinctions are not justified in the light of our modern society and that the complexity and confusion which has arisen is not due to difficulty in applying the original common law rules—they are all too easy to apply in their original formulation—but is due to the attempts to apply just rules in our modern society within the ancient terminology." 69 Cal. 2d 108, 117; 443 P.2d 561, 567, 70 Cal. Rptr. 97, 103.

*Rowland* had far-reaching impact upon the law of occupiers' liability. Consider the jurisdictions which adopted the *Rowland* teaching: Hawaii in 1969 (*Pickard v. City and County of Honolulu,* 51 Hawaii 134, 452 P.2d 445); Colorado in 1971 (*Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308); in 1972 the United States Court of Appeals for the District of Columbia (*Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97); Rhode Island in 1975 (*Mariorenzi v. DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127); New Hampshire in 1976 (*Ouellette v. Blanchard,*

116 N.H. 552, 364 A.2d 631); and New York in 1976 (*Basso v. Miller,* 40 N.Y.2d 233, 352 N.E.2d 868).

It is the fundamental duty of courts to keep the common law current with the problems and mores of the day. It is this elasticity which has contributed in large measure to the majesty of the common law. The Rhode Island court succinctly described this duty of the judiciary:

"The time has come to extricate ourselves from a semantical quagmire that had its beginning in ancient and misleading phraseology. Mr. Justice Sutherland has emphasized the judiciary's duty to bring the common law into accord with present day standards of wisdom and justice rather than to continue with some outmoded and antiquated rule of the past. [Citation.] The judiciary gave birth to the invitee, licensee, trespasser trio and the judiciary can lay this triptych to rest. Accordingly, we now give a final but fitting interment to the common-law categories of invitee, licensee, and trespasser as well as their extensions, exceptions, and extrapolations." *Mariorenzi v. DiPonte, Inc.* (1975), 114 R.I. 294, 306-07, 333 A.2d 127, 133.

When it is considered that most of today's population live in industrialized, urban communities, and that the social and economic relationships of the man of the day are both complex and close, the logic of abandoning the labels of trespasser, licensee, social guest, and invitee to history is compelling. See *Smith v. Arbaugh's Restaurant, Inc.* (1972), 469 F.2d 97, 102-03; *Ouellette v. Blanchard* (1976), 116 N.H. 552, 364 A.2d 631, 632; *Kermarec v. Compagnie Generale Transatlantique* (1959), 358 U.S. 625, 630, 3 L. Ed. 2d 550, 555, 79 S. Ct. 406, 410; *Rowland v. Christian* (1968), 69 Cal. 2d 108, 117, 443 P.2d 561, 567, 70 Cal. Rptr. 97, 103.

Since it was the judiciary which was the genesis of

these particular labels, it is the judiciary which must abolish them. The judiciary, it must be remembered, is the cartilage separating the old from the new tissue of the body politic.

Illinois has had experience with the reasonable care criterion in the case of trespassing minors. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614.) Subsequent decisions have made manifest the workability of this teaching. *Wilinski v. Belmont Builders, Inc.* (1957), 14 Ill. App. 2d 100; *Melford v. Gaus & Brown Construction, Inc.* (1958), 17 Ill. App. 2d 497; *Stewart v. DuPlessis* (1963), 42 Ill. App. 2d 192; *Halloran v. Belt Ry. Co.* (1960), 25 Ill. App. 2d 114; *Skaggs v. Junis* (1960), 27 Ill. App. 2d 251; *American National Bank & Trust Co. v. Pennsylvania R.R. Co.* (1964), 52 Ill. App. 2d 406; *Cora v. Chicago Housing Authority* (1971), 131 Ill. App. 2d 23; *American National Bank & Trust Co. v. Elgin, Joliet & Eastern Ry. Co.* (1971), 133 Ill. App. 2d 450.

We believe that the labels of trespasser, licensee, social guest, and invitee should be abolished. The duty of the occupier to all persons who come upon his property should be that of reasonable care under the circumstances, with foreseeability the measure of liability. This standard of reasonable care is the same as that applied in all negligence cases in this jurisdiction.

Today, unfortunately, the adoption of this teaching has failed. But we predict that Illinois, if it is to remain in the mainstream of development of the law, will soon recognize it.

The judgment of the appellate court, in our opinion, should be reversed and the cause remanded with directions to proceed in a manner not inconsistent with this dissent.

MR. JUSTICE CLARK joins in this dissent.