194 N.J. Super. 571 (1984)
477 A.2d 435
JAMES ENTWISTLE & GAIL ENTWISTLE, FRANCIS PAPAPIETRO, JOHN LENSI & FRANCES LENSI, KEVIN OSBORNE & GERALDINE OSBORNE, PLAINTIFFS,
v.
ROGER DRAVES D/B/A NORTH FORTY TAVERN, EDWARD DRAVES, ED'S MANOR TAVERN, INC. & RAYMOND LUBY, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided January 26, 1984.
*574 Thomas J. Pisarri for plaintiffs James Entwistle, Gail Entwistle and Francis Papapietro (Jacobs, McCarter & Pisarri, attorneys).
Marc N. Isenberg for plaintiffs John Lensi, Frances Lensi, Kevin Osborne and Geraldine Osborne.
Andrew S. Kessler for defendants Roger Draves and Raymond Luby (Klein, Chapman, DiIanni, Greenburg, Henkoff & Siegel, attorneys).
Bruce C. Morrissey for defendants Roger Draves d/b/a North Forty Tavern and Ed's Manor Tavern, Inc.
Timothy J. Dunn II for defendant Raymond Luby (Dunn & Dunn, attorneys).
VAN TASSEL, J.S.C.
Plaintiffs James Entwistle, Francis Papapietro, John Lensi and Kevin Osborne, police officers injured after responding to a reported disturbance in progress at North Forty Tavern in New Milford, New Jersey, instituted suit against the bar owner and property owner alleging that defendants acted in a careless, reckless and negligent manner in failing to prevent the disturbance and failing to prevent a nuisance and subsequent dangerous condition.
Summary judgment was initially granted by the court on July 21, 1983 in favor of defendants as to their causes of action alleging ordinary negligence. Summary judgment was denied as to any causes of action based upon more than ordinary negligence. Plaintiffs now move to amend their complaint to allege wilful and wanton misconduct and gross negligence. Defendants seek summary judgment by cross motion.
To put the issues in proper perspective, a brief review of the allegations set forth in plaintiffs' proposed amended complaint is necessary. The facts are not disputed. Plaintiff police officers responded to a call for help made by the bar employees *575 to police headquarters advising of an unruly crowd in the parking area of the bar. At least six or seven officers responded from New Milford and later police from Bergenfield and other towns assisted. Plaintiff Entwistle was struck in the head by beer bottles, mugs and perhaps even a two-by-four. He was badly injured and is now retired on disability from the police department. Plaintiff Papapietro was struck in the head by beer bottles and fists, plaintiff Lensi suffered serious head injuries and plaintiff Osborne sustained an eye injury.
The "fireman's rule" governs the circumstances of this case. This rule provides that negligence in causing a fire furnishes no basis for liability to a professional fireman injured fighting the fire. The New Jersey Supreme Court adopted the so-called fireman's rule with respect to tort cases in Krauth v. Geller, 31 N.J. 270 (1960). The Court extended and applied the rule to policemen in Berko v. Freda, 93 N.J. 81 (1983).[1]
The Court used the term "ordinary negligence" in its ruling in Berko, id. at 82. The fireman's rule bars suit for an act of ordinary negligence which creates the occasion for the presence of a fire fighter or a police officer at the place where he is injured. There has long been a distinction between the negligence which brings a fire fighter or a policeman to the scene and subsequent acts of misconduct which injure him. Krueger v. City of Anaheim, 130 Cal. App.3d 166, 181 Cal. Rptr. 631 (Ct.App. 1982); Walters v. Sloan, 20 Cal.3d 199, 142 Cal. Rptr. 152, 571 P.2d 609 (Sup.Ct. 1977).
Additional and subsequent acts of negligence which directly cause the officer's injuries can be the basis for recovery *576 under the laws of the State of New Jersey. Trainor v. Santana, 86 N.J. 403, 407 (1981).
By amending their complaint to allege gross negligence, plaintiffs seek to protect their cause of action from application of the fireman's rule. The issue is whether the application of the fireman's rule depends at all on the character of the alleged negligence. If the rule applies where defendant is guilty of ordinary negligence, does it also apply when he is guilty of gross negligence or wanton and wilful misconduct? This court concludes that the grade of negligence is immaterial so long as defendant's act created a condition or hazard with which policemen are employed to cope. The rationale of the fireman's rule is that one who knowingly and voluntarily confronts a hazard he is employed to accept cannot recover for injuries sustained thereby. Public policy considerations further support this conclusion. The rule precludes a tort recovery by firemen or policemen who are presumably compensated for the potential dangers they may encounter. Furthermore, this court notes that added compensation such as special salary, retirement and disability benefits is not limited to injury from negligent conduct but extends to all types of conduct resulting in injuries. Hubbard v. Boelt, 28 Cal.3d 480, 169 Cal. Rptr. 706, 620 P.2d 156 (Sup.Ct. 1980); see Berko v. Freda, supra, at 86, n. 1.
In Hubbard, the California Supreme Court concluded that the fireman's rule extends to reckless conduct and wilful and wanton misconduct as well as to ordinary negligence. Hubbard, supra at 152. Hubbard thus reaffirmed the ruling of the California Appellate Division in Holden v. Chunestudey, 101 Cal. App.3d 959, 161 Cal. Rptr. 925 (Ct.App. 1980). In Holden, a patrolman was summoned to the scene of a fatal accident apparently caused by defendant's driving while intoxicated. The officer slipped and fell while climbing a hill near the *577 accident scene. He argued that defendant's aggravated conduct justified an exception to the fireman's rule. The court rejected this contention stating that:
Police officers may not complain of wilful or wanton misconduct for they are employed to deal with behavior made the subject of their duties whether it arises as a result of someone's careful behavior, negligence or wilful or wanton misconduct. [161 Cal. Rptr. at 926; emphasis supplied]
In Hannah v. Jensen, 298 N.W.2d 52 (Minn.Sup.Ct. 1980) the fireman's rule was invoked to defeat the claim of a police officer against a bar owner for personal injuries suffered when he responded to a call requiring him to deal with an intoxicated patron. The holding was based on the conclusion that the dram shop law was enacted to protect the general public but not a policeman performing his duty.[2]
An illuminating discussion of the application of the fireman's rule is contained in the dissenting opinion of Judge Ryan in Court v. Grzelinski, 72 Ill.2d 141, 19 Ill.Dec. 617, 379 N.E.2d 281 (Sup.Ct. 1978) which expresses the view consistent with that of the majority of jurisdictions. Justice Ryan said:
While a fireman may not be aware of the exact nature of the danger when he responds to a call for his services he assumes all of the natural risks that may reasonably be anticipated. He is specially trained to anticipate and to encounter the risks associated with a fire. While he may be able to recover for injuries from unexpected, hidden, or abnormal dangers caused by a defendant or known to a defendant and not disclosed, he cannot recover for injuries occasioned by dangers which his training and experience would lead him to reasonably anticipate. [Id. at 286.]
In the case at bar there were no independent acts of negligence by the bar owners nor were there hidden or abnormal dangers *578 present. Plaintiffs were injured by the people they were called to control. Thus, as Judge Ryan explained:
It is not important in the application of the fireman's rule to determine what caused the particular danger which brought about the injury. Of critical importance is whether the particular danger is one that the fireman would anticipate in the performance of his duties. [Id. at 287]
See also Washington v. Atlantic Richfield Co., 66 Ill.2d 103, 5 Ill.Dec. 143, 361 N.E.2d 282 (Sup.Ct. 1976); Young v. Toledo, Peoria & Western R.R. Co., 46 Ill. App.3d 167, 4 Ill.Dec. 715, 360 N.E.2d 978 (App.Ct. 1977).
The Washington and Young cases cited above involved injuries sustained by firemen as the result of explosions. In each case recovery was denied because one of the reasons for the firemen's presence was to guard against such a danger. This would also appear to be true in the present case. The presence of intoxicated patrons potentially creating a disturbance for a tavern owner is one of the normal hazards a policeman faces when called to respond to a place of business at which alcoholic beverages are dispensed and sold. While the risk of being severely beaten and injured may not be reasonably anticipated and therefore not assumed by a policeman when called to open a locked car door or even when responding to a minor traffic accident, it seems to this court that it is an obvious and potential danger in being summoned to quell a disturbance at a local bar. The presence of intoxicated patrons at the scene of the disturbance here was not a highly dangerous, hidden or totally unexpected situation intentionally created by these defendants. The court is well aware that there may be certain cases where there may be a duty to warn of a hidden danger or peril known to an owner or occupant but unknown to or unobservable by a policeman exercising ordinary care. Failure to warn a policeman of these pitfalls, booby traps or other latent hazards could, under the proper circumstances, amount to such wilful and wanton negligence as to impose liability on a landowner or wrongdoer. Cf. Krauth v. Geller, supra. This set of circumstances, however, is not before the Court today.
*579 Cullivan v. Leston, 43 Or. App. 361, 602 P.2d 1121 (Ct.App. 1979) is a case very similar to the one at bar. In Cullivan, plaintiff police officer went to a tavern to investigate a fight reported to be in progress. He had been to that tavern at least a half-dozen times during the preceding six months to investigate disturbances and he knew the tavern had a reputation for rowdiness.[3] While trying to break up a fight, plaintiff was set upon, beaten and injured. The court applied the fireman's rule to that situation, deciding that the plaintiff could not recover against the tavern owner. The court said:
Here, plaintiff was told to investigate the fight in a tavern, and knew that a normal risk of carrying out his official duties was that he would walk into a tavern where a fight was in progress and that he might be injured by the participants. There was no `unusual, serious, hidden danger of a totally unexpected kind.' [Id. at 1122.]
This analysis of the Oregon court follows the holding of virtually every other jurisdiction in which this very question has been considered.
The police officer's conduct falls within fundamental tort principles which prevent a person from recovering for injury due to a knowingly and voluntarily encountered hazard. This court concludes that the proper application of Berko, supra, requires the conclusion that a police officer may not complain of wilful or wanton misconduct when he voluntarily confronts a hazard for which he is specifically compensated and which is inherent in his occupation as a police officer.
For the aforementioned reasons plaintiffs' motion to amend the complaint to add a count for wilful and wanton conduct is denied and summary judgment is granted to defendants since there are no factual issues and no legal theory of recovery left to plaintiffs.
NOTES
[1] The court's research indicates that the extension of the fireman's rule to policemen has taken place in a majority of jurisdictions across the country yet the rule continues to be referred to as the fireman's rule.
[2] A police officer certainly can anticipate that an intoxicated person, whom the officer is called to subdue, may become aggressive or even violent. The risk of injury from such a person is an inherent part of police work, just as the danger of explosion is an inherent part of firefighting. In performing his official duties, Hannah manifested his consent to assume the risks he could reasonably anticipate would accompany those duties. Therefore, the rationale of the fireman's rule clearly applies to this case.
[3] In the case at bar, employees of the North Forty Tavern had previously called the police a number of times to clear patrons who congregated in the parking lot and drank alcoholic beverages.